CP-98-6                                                                    1

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| In re: | Querella |
|---|---|
| Javier Criado Vázquez | 2001 TSPR 154 |
| | 155 DPR ____ |

Número del Caso: CP-1998-6

Fecha: 29/octubre/2001

Oficina del Procurador General:

  Lcda. Edna Evelyn Rodríguez Benítez
  Procuradora General Auxiliar

Abogado de la Parte Querellada:

  Lcdo. David López Pumarejo

Abogado de la Parte Querellante:

  Lcdo. Guillermo J. Ramos Luiña

Materia: Conducta Profesional
    (La suspensión es efectiva a partir del 1 de noviembre de 2001, fecha en que
    se le notificó al abogado el Per Curiam y Sentencia)

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

In re:

Javier Criado Vázquez                                         Conducta
                                            CP-98-6           Profesional

PER CURIAM

San Juan, Puerto Rico, a 29 de octubre de 2001.

El 14 de abril de 1989 el señor Héctor Frederick Espina Patterson radicó ante esta Curia una queja en contra del licenciado Javier Criado Vázquez. Alegó, en síntesis, que el referido letrado faltó a su deber de fiducia para con su cliente y que retuvo indebidamente el expediente del caso, aún después de ser requerida su entrega. En cumplimiento con la resolución emitida por este Tribunal el 13 de marzo de 1998, el Procurador General de Puerto Rico presentó querella el 24 de abril de 1998, formulando contra el licenciado Criado Vázquez cargos por violaciones a los Cánones 18, 19, 20, 25 y 35 del Código de Ética Profesional [1]. El Procurador General de Puerto Rico

---

[1] 4 L.P.R.A. Ap. XI, Cánones 18, 19, 20, 25 y 35.

le imputó, además, violación a lo dispuesto en el Artículo 579 del Código de Enjuiciamiento Civil.[2]

I

El 26 de abril de 1976 la señora Anna Patterson radicó demanda sobre división de herencia contra sus hijos Héctor Frederick Espina Patterson y Audrey Ann Espina Patterson, ante el entonces Tribunal Superior de Puerto Rico, Sala de Bayamón.[3] La demandante pretendía la partición y adjudicación de los bienes que integraban el caudal relicto de su ex cónyuge y padre de los demandados, señor Héctor Espina Díaz.[4] Al momento de la presentación de la demanda, los hermanos Espina Patterson eran menores de edad, por lo que se designó a un Procurador Especial de Relaciones de Familia como defensor judicial. Se designó, además, a la señora Sara Rosado como administradora judicial del caudal relicto.[5] Los hermanos Espina Patterson fueron representados en dicho pleito por el licenciado Ángel L. Montañez Torres hasta el 7 de marzo de 1983, fecha en que dicho abogado renunció su representación legal. En esa misma fecha, el licenciado Criado Vázquez asumió la representación legal de los hermanos, acordándose entre las partes que el referido abogado sería remunerado sobre la base de un contrato de honorarios contingentes.[6] En dicha fecha, además, se aceptó la renuncia de la administradora judicial y se nombró, en su lugar, a Audrey Ann Espina Patterson, por advenir ésta a su mayoría de edad.[7] El entonces Tribunal Superior, Sala de Bayamón, dictó sentencia el 28 de abril de 1987, aprobando los acuerdos a que habían llegado las partes, entre éstos, que el inmueble

---

[2] 32 L.P.R.A. sec. 2439.

[3] Caso civil número 76-1437.

[4] La demandante advino a la condición de cónyuge inocente en el procedimiento de divorcio bajo el estado de derecho anterior a la Ley Núm. 25 de 8 de diciembre de 1990, que enmendó el Artículo 761 del Código Civil de Puerto Rico. Por tanto, era acreedora a la cuota vidual usufructuaria, ya que, como cuestión de hecho, ninguno de los ex cónyuges había contraído matrimonio posteriormente con otra persona.

[5] Determinación de Hecho número 3, Informe del Comisionado Especial, pág. 8.

[6] Determinación de Hecho número 7, Íd, pág. 9.

[7] Determinación de Hecho número 8, Íd., pág. 9.

ubicado en la Carretera Estatal Número 174, Barrio Guaraguao Abajo de Bayamón, utilizado como una estación de servicio de gasolina, le sería adjudicado a los hermanos Espina Patterson.[8]  No obstante, dicha estación de gasolina había sido arrendada con una opción de compra, mediante un contrato otorgado el 9 de noviembre de 1983.[9]  Dicho contrato se otorgó ante el licenciado Criado Vázquez por el matrimonio compuesto por el señor Jaime Rodríguez Alicea y la señora Raquel Rodríguez, y por la Sucesión Espina, representada en ese acto por Audrey Ann Espina Patterson, administradora judicial de dicha sucesión.[10]  Audrey Ann Espina Patterson no fue autorizada por el Tribunal Superior, Sala de Bayamón, para otorgar dicho contrato.[11] El 31 de agosto de 1987, el licenciado Criado Vázquez le envió a los hermanos Espina Patterson una factura parcial por los servicios profesionales prestados, exigiendo el veinte y cinco por ciento (25%) del precio de compraventa acordado a pagarse por la estación de gasolina en el aludido contrato de opción.[12]  El 15 de marzo de 1988, el señor Héctor Frederick Espina Patterson prescindió de los servicios profesionales del licenciado Criado Vázquez y le requirió la entrega del expediente del caso sobre división de herencia.[13]  El aludido letrado se negó a entregar el expediente.[14]  La entrega del expediente fue requerida en cuatro (4) instancias adicionales.[15] El 22 de diciembre de 1988, el licenciado Criado Vázquez radicó una demanda sobre cobro de dinero en el entonces Tribunal Superior, Sala de San Juan,

---

[8] Determinación de Hecho número 9, Íd., pág. 9.

[9] Determinación de Hecho número 16, Íd., pág. 10.  Para la fecha en que fue otorgado el contrato, el señor Héctor Frederick Espina Patterson ya había advenido a su mayoría de edad.

[10] Determinación de Hecho número 16, Íd., pág. 10; Apéndice II del Informe del Procurador General, págs. 16-20.

[11] Determinación de Hecho número 17, Íd., pág. 10.

[12] Apéndice III del Informe del Procurador General, pág. 21.

[13] Determinación de Hecho número 27, Informe del Comisionado Especial, pág. 12; Apéndice IV del Informe del Procurador General, pág. 22.  Cabe señalar, que en dicha determinación de hecho hay un error tipográfico en cuanto al año en que se prescindió de los servicios profesionales del querellado.

[14] Determinación de Hecho número 27, Íd., pág. 12.

contra los hermanos Espina Patterson por la suma de treinta y tres mil doscientos cincuenta dólares ($33,250), más los intereses.[16] El 1 de junio de 1989, el señor Héctor Frederick Espina Patterson radicó demanda sobre sentencia declaratoria, nulidad de contrato y daños y perjuicios contra el señor Jaime Rodríguez Alicea, su esposa, la señora Raquel Rodríguez, y su hermana, la señora Audrey Ann Espina Patterson, ante el entonces Tribunal Superior, Sala de Bayamón.[17] Dicho Tribunal dictó sentencia el 28 de diciembre de 1992, declarando nulo e ilegal el contrato de arrendamiento suscrito por la señora Audrey Ann Espina Patterson.[18] La acción judicial sobre cobro de dinero por honorarios profesionales terminó con una transacción entre las partes, mediante la cual el señor Héctor Frederick Espina Patterson se comprometió a pagar al licenciado Criado Vázquez la suma de doce mil dólares ($12,000) en un término de seis (6) meses y a retirar la queja que había radicado contra el referido letrado ante esta Curia el 14 de abril de 1989.[19] Este Tribunal, mediante resolución de 8 de junio de 1989, había pospuesto su determinación sobre el ejercicio de su jurisdicción disciplinaria hasta tanto fuera final y firme la sentencia que pudiere recaer en dicho caso. La referida resolución, además, ordenaba al querellado la entrega del expediente sobre el caso de división de herencia al señor Héctor Frederick Espina Patterson. El licenciado Criado Vázquez procedió a realizar la entrega de dicho expediente. El 17 de septiembre de 1996, el señor Héctor Frederick Espina Patterson solicitó a este Tribunal el archivo y sobreseimiento de la presente queja.[20] No obstante, el Procurador General de Puerto Rico recomendó en su informe a este Tribunal que dicha queja no

---

[15] Véase Apéndice V y IX del Informe del Procurador General, págs. 23-25, 33.

[16] Apéndice VII del Informe del Procurador General, págs. 27-28. Caso civil número KCD88-2163, Javier Criado Vázquez v. Audrey Ann Espina, et als.

[17] Caso civil número CS-89-2767, Héctor Frederick Espina Patterson v. Jaime Rodríguez Alicea et als.

[18] Apéndice I del Informe del Procurador General, págs. 1-15.

[19] Determinación de Hecho número 26, Informe del Comisionado Especial, pág. 12.

[20] Véase "Moción Aclaratoria en Torno a Escrito Informativo".

fuera archivada.[21]  El 13 de mayo de 1998 este Tribunal ordenó al Procurador General de Puerto Rico la presentación de la querella correspondiente contra el licenciado Criado Vázquez.  Los cargos imputados, en síntesis, son los siguientes:

CARGO I

El licenciado Criado Vázquez violó la fe pública notarial y el Canon 35 del Código de Ética Profesional, supra, al participar activa y conscientemente en el asesoramiento, redacción y otorgamiento de un contrato de opción de compraventa, mediante el cual se pretendía burlar la orden del tribunal que denegó la solicitud de autorización para la venta de un bien perteneciente al caudal relicto, indiviso y sin adjudicar de la Sucesión Espina.  Dicha conducta del letrado querellado violentó las disposiciones antes mencionadas, según interpretadas en el caso In re Del Río Rivera y Otero Fernández.[22]  De la misma manera, el licenciado Criado Vázquez infringió el Canon 18 del Código de Ética Profesional, supra, el cual requiere que todo abogado se desempeñe en forma capaz y diligente, dentro de los límites de la ley, según resuelto en el caso In Re Vargas Soto.[23]

CARGO II

El licenciado Criado Vázquez violó conscientemente la prohibición establecida en el Artículo 579 del Código de Enjuiciamiento Civil, supra, al asesorar, redactar y otorgar un contrato de opción de compraventa de un bien perteneciente a un caudal relicto indiviso sin mediar la autorización previa del tribunal.

CARGO III

El licenciado Criado Vázquez violó el Canon 19 del Código de Ética Profesional, supra, al no mantener informado a su cliente del desarrollo de los asuntos encargados.  Dicha conducta violó, además, los deberes de fiducia entre abogado-cliente.

CARGO IV

El licenciado Criado Vázquez violó las disposiciones de los Cánones 25 y 35 del Código de Ética Profesional, supra, al radicar una demanda en cobro de dinero por servicios profesionales con conciencia de que su acreencia a honorarios dependía de una contingencia que jamás se dio.

CARGO V

El licenciado Criado Vázquez violó el Canon 20 del Código de Ética Profesional, supra, al retener indebidamente el expediente del caso de división de herencia, luego de ser requerida la entrega por su cliente.

_____

[21] Véase Informe del Procurador General, pág. 9.

[22] 118 D.P.R. 339 (1987).

[23] 108 D.P.R. 490 (1979).

El 15 de mayo de 1998, el querellado presentó su contestación a la querella. En cuanto a los cargos I, II y III, el referido letrado argumentó que el señor Héctor Frederick Espina Patterson estuvo en todas las conversaciones previas al otorgamiento del contrato de arrendamiento y que fue él quien trajo a los arrendatarios. Adujo, además, que no existía orden o disposición alguna emitida por el tribunal que prohibiera llevar a cabo el contrato de arrendamiento con opción a compra. Arguyó que todos los recibos de pago por cánones de arrendamiento recibidos aparecían firmados por el señor Héctor Frederick Espina Patterson. Finalmente, alegó que utilizar la sentencia dictada por el entonces Tribunal Superior, Sala de San Juan, que declaró nulo e ilegal el contrato de arrendamiento en cuestión, como hecho juzgado, violaba el debido proceso de ley del referido letrado, pues él nunca fue parte de dicho pleito.

En cuanto al cargo IV, el licenciado Criado Vázquez arguyó que ante la inacción de sus clientes de satisfacer los honorarios pactados, ejercitó su derecho al cobro de los mismos. Presentó una demanda de cobro de dinero, por constituir esa deuda una líquida y exigible.

Por último, en cuanto al cargo V, afirmó que retuvo el expediente del caso de división de herencia, aún luego de ser requerida su entrega, porque entendió que la autorización escrita de su clienta, la señora Audrey Ann Espina Patterson, era necesaria para proceder con la entrega.

El Comisionado Especial, licenciado Ramón E. Gómez Colón, señaló la celebración de una Conferencia con Antelación a la Vista en su Fondo. En dicha conferencia la Oficina del Procurador General de Puerto Rico informó al Comisionado Especial que sometería el caso por el expediente.[24] El licenciado Criado Vázquez se opuso a dicho curso de acción, alegando que, conforme a la Regla 14(j) del Reglamento de este Tribunal,[25] el querellado tenía derecho a carearse con los testigos, en particular con el testimonio del querellante,

---

[24] El expediente de la acción disciplinaria ante nos está compuesto por los expedientes sobre la queja AB-89-14 y la querella CP-98-6, respectivamente; sobre los autos de los casos civiles sobre división de herencia de la Sucesión Espina; sobre sentencia declaratoria que declaró nulo e ilegal el contrato de arrendamiento y sobre cobro de dinero por honorarios profesionales.

señor Héctor Frederick Espina Patterson. Adujo además el querellado, que es al Procurador General de Puerto Rico a quien le corresponde sostener con prueba admisible, robusta y convincente la violación a los Cánones de Ética Profesional por imperativo constitucional de garantizarle un debido proceso de ley. La vista evidenciaria se celebró los días 21 de septiembre de 1999, 24 de febrero de 2000 y 5 de abril de 2000, respectivamente. El 1 de noviembre de 2000, el Comisionado Especial rindió su informe, en el cual hizo las determinaciones de hechos ya relatadas y, en adición, las siguientes: 1) que el señor Héctor Frederick Espina Patterson llamó por teléfono al licenciado Criado Vázquez para que compareciera a una vista el 7 de marzo de 1983 en el caso de división de herencia; 2) que en dicha vista el referido letrado acordó con los hermanos Espina Patterson asumir la representación legal de éstos y a ser remunerado sobre la base de honorarios contingentes; 3) que luego de asumir la representación legal de los hermanos Espina Patterson, el licenciado Criado Vázquez se reunió con éstos en su oficina para discutir la grave situación económica que enfrentaban; 4) que el señor Héctor Espina Patterson tenía interés en reabrir la estación de gasolina, porque le adeudaba dinero a las Gasolinas Isla; 5) que el señor Espina Patterson le informó al querellado que había conseguido un matrimonio interesado en alquilar el puesto de gasolina por quinientos dólares mensuales ($500.00), con opción a compra. Que éste instruyó al licenciado Criado Vázquez para que redactara el aludido contrato, el cual nunca se firmó; 6) que varios meses después el querellante llamó al letrado para informarle que tenía otros clientes que interesaban arrendar el local por la misma cantidad, con una opción a compra por el precio de ciento treinta y tres mil dólares ($133,000); 7) que dicho contrato fue firmado por su hermana, Audrey Ann Espina Patterson, en representación de la Sucesión Espina, por ser ella la administradora judicial de la misma; 8) que el 9 de noviembre de 1983 se otorgó el referido contrato ante el querellado; 9) que la señora Audrey Ann Espina Patterson no fue autorizada por el Tribunal de Primera Instancia para otorgar dicho contrato y que el mismo fue declarado nulo, por ser contrario a la ley, tres años después, el 28 de diciembre de

---

[25] 4 L.P.R.A. Ap. XXI-A, R. 14.

1992 en el caso civil número 89-2767; 10) que en la vista celebrada ante el Comisionado Especial no se desfiló prueba que lo convenciera de que el querellado Javier Criado Vázquez no mantuvo informado al querellante de todos los trámites y asuntos que surgían en el caso de la división de herencia, ni tampoco que el señor Espina no autorizara o tuviera conocimiento del negocio que se realizó con el puesto de gasolina; 11) que el Comisionado Especial le impartió credibilidad al testimonio del señor Jaime Rodríguez Alicea y al de su padre, señor Juan B. Rodríguez Aguayo, a los efectos de que el señor Espina Patterson y el licenciado Criado Vázquez fueron quienes negociaron con ellos el contrato de arrendamiento y que le pagaron al señor Espina Patterson la renta de la propiedad arrendada; 12) que la testigo señora Waleska Irrizarry Nazario declaró que trabajó con el licenciado Criado Vázquez y que el señor Héctor Espina Patterson constantemente visitaba y llamaba a la oficina urgiendo al referido letrado para que resolviera sus asuntos y que el querellante conocía lo que estaba pasando en su caso; 13) que en fecha posterior al otorgamiento del contrato de arrendamiento, el señor Héctor Espina Patterson llamó al licenciado Criado Vázquez y le expresó que no iba a vender la estación de gasolina. Añadió, que el referido letrado había contratado con su hermana, por lo que debía ser ella quien pagara los honorarios de abogado; 14) que el licenciado Criado Vázquez tuvo problemas matrimoniales, por lo que decidió demandar al señor Espina Patterson en cobro de honorarios profesionales el 22 de diciembre de 1998; 15) que desde el 15 de marzo de 1988, el querellante le escribió al licenciado Criado Vázquez prescindiendo de sus servicios y requiriéndole la entrega del expediente del caso sobre división de herencia, a lo que se negó el querellado; 16) que el licenciado Criado Vázquez admitió que cometió un error al no entregarle a los hermanos Espina Patterson el expediente requerido. El Comisionado Especial aclaró que para poder estar en condiciones de estimar probados la mayor parte de los hechos expuestos en los cargos presentados, a su juicio, era menester presentar la prueba testifical del querellante. Dicho Comisionado Especial añadió que no tuvo el beneficio de escuchar dicha prueba, ya que sin

explicación razonable alguna el señor Héctor Frederick Espina Patterson no fue presentado como testigo.[26]

Evaluada la querella presentada por el Procurador General de Puerto Rico, el Informe del Comisionado Especial, la posición del querellado y el resto de los documentos que obran en el expediente del caso, nos encontramos en posición de resolver el asunto ante nos.

II

Examinaremos en conjunto los cargos I y II, por estar ambos íntimamente relacionados. El Procurador General de Puerto Rico le imputa al licenciado Criado Vázquez la violación de lo establecido en el Artículo 579 del Código de Enjuiciamiento Civil, supra, de violar la fe pública notarial y lo dispuesto en los Cánones 18 y 35 del Código de Ética Profesional, supra.

El Artículo 579 del Código de Enjuiciamiento Civil, supra, dispone lo siguiente:

> El administrador no venderá los bienes inventariados, excepción hecha de los que puedan deteriorarse, de aquéllos cuya conservación sea difícil y costosa, de los frutos para cuya enajenación se presenten circunstancias ventajosas y de los demás bienes cuya enajenación sea necesaria para el pago de deudas del finado o cubrir atenciones de la administración. **El tribunal, a propuesta del administrador y previa notificación y audiencia de los herederos reconocidos, podrá decretar la venta de cualesquiera de dichos bienes en pública subasta y previo avalúo por peritos.** Las subastas se verificarán con las mismas solemnidades y en los propios términos establecidos para las de los arrendamientos. (Énfasis nuestro.)

Hemos sido enfáticos al reconocer que el propósito rector de esta disposición estatutaria es la protección de los intereses legítimos de los herederos, acreedores y legatarios.[27] Esto responde a que, de ordinario, el administrador judicial de un caudal relicto no está facultado para enajenar o realizar actos de riguroso dominio sobre los bienes de una herencia.[28] Su función consiste fundamentalmente en la administración, custodia, conservación y defensa de los bienes del caudal relicto, hasta tanto éstos sean adjudicados a los herederos o interesados.[29] Un administrador judicial sólo podrá realizar actos de riguroso dominio o actos que excedan aquellos de mera administración sobre los bienes del caudal relicto cuando medie la autorización de todos los herederos o del tribunal.[30] En

---

[26] Lo expresado por el Comisionado Especial opera en beneficio del querellado.

[27] Sánchez Rodríguez v. López Jiménez, 116 D.P.R. 172 (1985); Sucn. Mercado Parra v. Srio. de Hacienda, 92 D.P.R. 710 (1965).

[28] Irrizarry Cordero v. Registrador, 89 D.P.R. 747 (1964); Crehore v. El Regis. de Guayama, 22 D.P.R. 32 (1915).

[29] Ab Intestato Balzac Vélez, 109 D.P.R. 670 (1980).

[30] Sánchez Rodríguez v. López Jiménez, supra; Mercado v. Mercado, 66 D.P.R. 38 (1946); Crehore v. El Regis. de Guayama, supra. Véase, además, E. González

el caso particular en que existan herederos forzosos menores de edad, será indispensable para poder enajenar bienes del caudal relicto, seguir rigurosamente el procedimiento estatuido en los Artículos 614 y 616 del Código de Enjuiciamiento Civil[31] para la venta de los bienes pertenecientes a menores de edad y lo contemplado en el Artículo 579 del Código de Enjuiciamiento Civil, _supra_.[32]

Del expediente del caso civil número 76-1437, sobre división de herencia, surge que la administradora judicial del caudal relicto de la Sucesión Espina Díaz solicitó, el 21 de agosto de 1981, la autorización del Tribunal para vender la estación de gasolina, prescindiendo del proceso estatuido en el Artículo 579 del Código de Enjuiciamiento Civil, _supra_.[33] A la fecha de dicha solicitud, los hermanos Espina Patterson no habían alcanzado la mayoría de edad. El entonces Tribunal Superior, Sala de Bayamón, mediante orden de fecha 27 de agosto de 1981, denegó dicha petición.

Al momento de otorgarse el contrato de arrendamiento de la referida estación de gasolina, los bienes del caudal relicto de la Sucesión Espina Díaz se encontraban en estado de indivisión y sin efectuarse la adjudicación de los mismos. El contrato suscrito por affidávit ante el licenciado Criado Vázquez, el 9 de noviembre de 1983, por Audrey Ann Espina Patterson, la administradora judicial de la Sucesión Espina Díaz, efectivamente concedía un derecho de opción de compra, **derecho que excedía los actos de mera administración para los cuales normalmente está facultada una administradora judicial**. Dicho contrato no estaba autorizado por el Tribunal ni contaba con el consentimiento de todos los herederos de la Sucesión Espina Díaz. Para la fecha en que éste fue otorgado, el querellante ya había advenido a su mayoría de edad. Aún cuando de las determinaciones de hechos del Comisionado Especial puede entenderse que el querellante con sus actos dio su consentimiento tácito para otorgar el referido contrato, faltaba el consentimiento y la firma de Anna Patterson, madre de los hermanos Espina Patterson y heredera forzosa de la Sucesión Espina Díaz.[34] En consecuencia, el referido contrato fue declarado nulo el 28 de diciembre de 1992, por el entonces Tribunal Superior, Sala de Bayamón.

---

Tejera, _Derecho Sucesorio Puertorriqueño_, San Juan, Puerto Rico, Ed. Ramallo, 1983, Vol. I, pág. 205.

[31] 32 L.P.R.A. secs. 2721-2723.

[32] _Irrizarry Cordero v. Registrador_, _supra_.

[33] Véase "Moción Solicitando Autorización para Disponer de Propiedad mediante Venta Privada". La entonces administradora judicial solicitaba al Tribunal autorización para vender la estación de gasolina sin recurrir al procedimiento de subasta pública.

[34] Cabe señalar, que el entonces Tribunal Superior, Sala de Bayamón, en el caso civil sobre sentencia declaratoria y nulidad de contrato encontró probado que el querellante no dio su consentimiento para otorgar el referido contrato ni lo ratificó posteriormente.

No podemos acoger la contestación del letrado querellado, a los efectos de que no existía orden o disposición alguna que impidiera la celebración de dicho contrato. Ya hemos expresado que el entonces Tribunal Superior, Sala de Bayamón, había denegado anteriormente una solicitud de autorización judicial para la venta de la estación de gasolina. El licenciado Criado Vázquez era el abogado de los hermanos Espina Patterson en el caso sobre división de herencia. Se presume que la información contenida en dicho expediente era o debió ser de su conocimiento, por ser éste el custodio del mismo. Por otro lado, este Tribunal ha sido enérgico en reafirmar la **función dual** que ejerce un notario en nuestra jurisdicción. Hemos reiterado que el notario nuestro es un **funcionario público** y un **profesional, técnico conocedor del Derecho**.[35] A estos efectos, la Regla 2 del Reglamento Notarial dispone, en lo pertinente, lo siguiente:[36]

> El notario **es el profesional del derecho** que ejerce una función pública que consiste en recibir, interpretar y **dar forma legal a la voluntad de las partes**, dar fe de hechos, redactar los instrumentos adecuados a ese fin, conferirles autenticidad, conservar los originales de éstos y expedir copias que den fe de su contenido.
>
> En su función pública, ejerce la fe pública notarial que tiene y ampara un doble carácter:
>
> (A) En la esfera de los hechos, la exactitud de lo que el notario ve, oye o percibe por sus sentidos, y
>
> (B) en la esfera del Derecho, confiere autenticidad y fuerza probatoria a las declaraciones de voluntad de las partes en el instrumento público redactado conforme a su juicio **sobre los preceptos del ordenamiento jurídico para la validez y eficacia del acto o contrato formalizado**, y sobre la identidad y capacidad de las partes. (Énfasis nuestro.)

Cumpliendo con su ministerio de jurista, un notario tiene el deber de asesorar, ilustrar y dar consejo legal a todas las partes contratantes para que comprendan los efectos y las consecuencias jurídicas del negocio celebrado. De la misma manera, su función comprende **el asegurarse de la legalidad de toda transacción que ante él se concreta**.[37] Un notario que falta a estos deberes deontológicos, falta a la fe notarial de la cual es principal guardador.[38]

---

[35] In re Igartúa Muñoz, res. el 2 de febrero de 2001, 2001 T.S.P.R. 13, 153 D.P.R. ____ (2001), 2001 J.T.S. 16; In re Bryan, Vargas, res. el 3 de enero de 2000, 2000 T.S.P.R. 1, 150 D.P.R. ___ (2000), 2000 J.T.S. 14; In re Capestany Rodríguez, res. el 30 de junio de 1999, 99 T.S.P.R. 109, 148 D.P.R. ___ (1999), 99 J.T.S. 113; In re Colón Ramery, 133 D.P.R. 555 (1993); In re Colón Muñoz, 131 D.P.R. 121 (1992); Ramírez Lebrón v. Registrador, 131 D.P.R. 76 (1992); In re Cruz Cruz, 126 D.P.R. 448 (1990); Chévere v. Cátala, 115 D.P.R. 432 (1984); In re Feliciano, 115 D.P.R. 172 (1984); In re Mélendez Pérez, 104 D.P.R. 770 (1976).

[36] 4 L.P.R.A. Ap. XXIV, R. 2.

[37] In re Feliciano Ruiz, 117 D.P.R. 269 (1986); In re Méndez Pérez, 104 D.P.R. 770 (1976).

[38] Íd.

El Artículo 2 de la Ley Notarial de Puerto Rico recoge el principio de la **fe pública notarial**. Sobre este particular, dicho artículo establece lo siguiente:[39]

> El notario es el **profesional del Derecho que ejerce una función pública, autorizado para dar fe y autenticidad conforme a las leyes de los negocios jurídicos y demás actos y hechos extrajudiciales que ante él se realicen**, sin perjuicio de lo dispuesto en las leyes especiales. Es su función recibir e interpretar la voluntad de las partes, **dándole forma legal**, redactar las escrituras y documentos notariales a tal fin y conferirle[s] autoridad a los mismos. La fe pública al notario es plena respecto a los hechos que, en el ejercicio de su función personalmente ejecute o compruebe y también respecto a la forma, lugar, día y hora del otorgamiento. (Énfasis nuestro.)

La fe pública notarial es la espina dorsal de todo el esquema de autenticidad documental notarial.[40]   El notario es el custodio de la fe pública y cuando autoriza un documento presuntamente da fe y asegura que el mismo cumple **con todas los requisitos de ley, formal y sustantivos**; que el documento es legal y verdadero; y que se trata de **una transacción válida y legítima.**[41] Por la importancia de la fe pública notarial, reiteramos, una vez más, nuestro pronunciamiento relativo a que la sanción impuesta por una violación a dicha responsabilidad debe ser severa por la gravedad de la falta envuelta.[42]

Del mismo modo, el Canon 35 del Código de Ética Profesional, _supra_, recoge la obligación que tiene todo notario de ejercer su función con honradez y sinceridad, exaltando los valores de la profesión.  Dicho canon dispone lo siguiente:[43]

> La conducta de cualquier miembro de la profesión legal ante los tribunales, **para con sus representados** y en las relaciones con sus compañeros debe ser sincera y honrada.
>
> No es sincero ni honrado el utilizar medios que sean inconsistentes con la verdad ni se debe inducir al juzgador a error utilizando artificios o una falsa relación de los hechos o del

---

[39] 4 L.P.R.A. sec. 2002.

[40] In re Ortiz Gutiérrez, res. el 18 de enero de 2001, 2001 T.S.P.R. 22, 153 D.P.R. ____ (2001), 2001 J.T.S. 23; In re González Maldonado, res. el 20 de diciembre de 2000, 2000 TSPR 192, 152 D.P.R. ____ (2000), 2000 J.T.S. 203; In re Díaz Ortiz, res. el 29 febrero de 2000, 2000 T.S.P.R. 53, 150 D.P.R. ____ (2000), 2000 J.T.S. 66; In re Jiménez Brackel, res. el 11 de mayo de 1999, 99 T.S.P.R. 73, 148 D.P.R. ___ (1999), 99 J.T.S. 79; In re Vera Vélez, res. el 5 de abril de 1999, 99 T.S.P.R. 46, 148 D.P.R. ___ (1999), 99 J.T.S. 51; In re Iglesias Pérez, res. el 30 de junio de 1998, 98 T.S.P.R. 101, 146 D.P.R. ____ (1998), 98 J.T.S. 108; In re Vargas Hernández, 135 D.P.R. 603 (1994); In re Medina Lugo, 136 D.P.R. 120 (1994); In re González González, 119 D.P.R. 496 (1987); In re Meléndez Pérez, 104 D.P.R. 770 (1976).

[41] In re Feliciano Ruiz, _supra_.

[42] In re Iglesias Pérez, _supra_; In re Jiménez Brackel, _supra_; In re Vargas Hernández, _supra_; In re Meléndez Pérez, _supra_.

[43] 4 L.P.R.A. Ap. IX, C. 35.

derecho. Es impropio variar o distorsionar las citas jurídicas, suprimir parte de ellas para transmitir una idea contraria a la que el verdadero contexto establece **u ocultar alguna que le es conocida.**

El abogado debe ajustarse a la sinceridad de los hechos al examinar los testigos, **al redactar afidávit** u otros documentos, y al presentar causas. El destruir evidencia documental o facilitar la desaparición de evidencia testifical en un caso es también altamente reprochable. (Énfasis nuestro.)

El referido canon impone a todo abogado unas normas mínimas de conducta, indispensables para preservar el honor y la dignidad de la profesión. Estas normas mínimas deben ser observadas no sólo en la tramitación de los pleitos, sino en toda faceta desempeñada por los abogados.[44]

En el contrato de arrendamiento con opción de compraventa suscrito ante el licenciado Criado Vázquez se expresaba que la señora Audrey Ann Espina Patterson comparecía "por sí y en representación de la Sucesión Espina Díaz". Como sabemos, un notario cuando otorga un affidávit no asume responsabilidad por el contenido del documento cuyas firmas legitime.[45] No obstante, el propio querellado acepta en su contestación a la querella que fue él quien redactó dicho documento.[46]

Por último, el Canon 18 del Código de Ética Profesional, _supra_, recoge los criterios con que debe cumplir todo abogado en el desempeño de su deber profesional. Dicho canon lee de la manera siguiente:[47]

Será impropio de un abogado asumir una representación profesional cuando está consciente de que no puede rendir una labor idónea competente y que no puede prepararse adecuadamente sin que ello apareje gastos o demoras irrazonables a su cliente o a la administración de la justicia.

Es deber del abogado defender los intereses del cliente diligentemente, desplegando en cada caso su más profundo saber y habilidad y **actuando en aquella forma que la profesión jurídica en general estima adecuada y responsable.**

Este deber de desempeñarse en forma capaz y diligente no significa que el abogado **puede realizar cualquier acto que sea conveniente con el propósito de salir triunfante en las causas del cliente.** La misión del abogado no le permite que en defensa de un cliente **viole las leyes del país** o **cometa algún engaño. Por consiguiente, al sostener las causas del cliente, debe actuar dentro de los límites de la ley, teniendo en cuenta no sólo la letra de ésta, sino el espíritu y los propósitos que la informan.** No debe tampoco ceder en el cumplimiento de su deber por temor a perder el favor judicial ni la estimación popular. No obstante, un abogado puede asumir cualquier representación profesional si se prepara adecuadamente para ello y no impone gastos ni demoras irrazonables a su cliente y a la administración de la justicia. (Énfasis nuestro.)

Dicho canon le impone unos criterios éticos a toda actuación profesional de un abogado. En particular, le impone taxativamente a los abogados la obligación de defender

---

[44] In re Belk, Serapión, res. el 28 de junio de 1999, 99 T.S.P.R. 121, 148 D.P.R. \_\_\_\_ (1999), 99 J.T.S. 126 ; In re Martínez, Odell I, res. el 12 de abril de 1999, 99 T.S.P.R. 53, 148 D.P.R. \_\_\_\_ (1999), 99 J.T.S. 59.

[45] Artículo 56 de la Ley Notarial de Puerto Rico, 4 L.P.R.A. sec. 2091.

[46] Véase "Contestación a Querella".

[47] 4 L.P.R.A. Ap. IX, C. 18.

diligentemente los intereses del cliente, **pero sin recurrir a la violación de las leyes** o a cometer engaños para sostener su causa.[48]

Concluimos que la actuación del licenciado Javier Criado Vázquez, al participar conscientemente en el asesoramiento, redacción y otorgamiento del contrato de arrendamiento con opción de compra de un bien indiviso y sin adjudicar del caudal relicto de la Sucesión Espina Díaz, violentó la fe pública notarial y los deberes de sinceridad y dignidad consignados en el Canon 35 del Código de Ética Profesional, supra. Del mismo modo, el licenciado Criado Vázquez incumplió con los deberes profesionales de responsabilidad, capacidad y diligencia exigidos por el Canon 18 del Código de Ética Profesional, supra. La necesidad económica de sus clientes no justificaba el otorgamiento del referido contrato de arrendamiento con opción a compra sin la autorización judicial necesaria o sin el consentimiento de todos los herederos. En cuanto a la violación de lo dispuesto en el Artículo 579 del Código de Enjuiciamiento Civil, supra, resolvemos que aún cuando el derecho de opción de compra no constituye un acto de enajenación per se, sí excede un mero acto de administración, y ésto debió constarle al letrado querellado.

El Procurador General de Puerto Rico le imputa, además, al querellado la violación de lo contemplado en el Canon 19 del Código de Ética Profesional, supra.

El aludido canon le impone a todo abogado el deber ineludible de mantener informado a su cliente de todo asunto importante que surja en el trámite de su caso. Dicha obligación de suministrar información a su cliente es elemento imprescindible en la relación fiduciaria abogado cliente. Dicha disposición ética establece, en lo pertinente, lo siguiente:

> El abogado debe mantener a su cliente siempre informado de todo asunto importante que surja en el desarrollo del caso que le ha sido encomendado.

Entendemos que dicho cargo no se sostiene, a tenor con la prueba desfilada ante el Comisionado Especial, ni de los documentos que constan en el expediente de este Tribunal. El Comisionado Especial expresó que toda la prueba desfilada lo convenció de que el querellado mantuvo informado al querellante de todo asunto que surgía en el caso de división de herencia, así como del negocio que se realizó con la estación de gasolina. El Comisionado Especial fundamentó esta determinación en la prueba testifical ofrecida en la vista evidenciaria que estableció que el querellante visitaba y llamaba regularmente a la oficina del querellado. Resolvemos que el licenciado Criado Vázquez no incumplió el deber de informar a su cliente, de acuerdo con el Canon 19 del Código de Ética Profesional, supra.

Finalmente atendemos lo planteado en los cargos IV y V imputados por el Procurador General de Puerto Rico al querellado.

---

[48] In re Vélez Barlucea, res. el 26 de octubre de 2000, 2000 T.S.P.R. 158, 152 D.P.R. ____ (2000), 2000 J.T.S. 170; In re Filardi Guzmán, 144 D.P.R. 710 (1998); In re Soto, 134 D.P.R. 772 (1993); In re Vargas Soto, 108 D.P.R. 490 (1979).

El Canon 25 del Código de Ética Profesional, supra, establece que la radicación de una demanda sobre cobro de honorarios profesionales por parte de un abogado contra su cliente está permitida sólo en aras de evitar injusticias, imposiciones o fraude. No obstante, no es hasta que el abogado termina su gestión profesional que puede reclamar sus honorarios profesionales.[49] El referido Canon 25 prescribe lo siguiente:

> Las controversias con los clientes con respecto a la compensación deben evitarse por el abogado en todo lo que sea compatible con el respeto a sí mismo y con el derecho que tenga a recibir una compensación razonable por los servicios prestados. **Solamente deben establecerse demandas contra los clientes para evitar injusticias, imposiciones o fraudes.** (Énfasis nuestro.)

El contrato de honorarios profesionales de abogado es una variante del contrato de arrendamiento de obra, con la particularidad que el mismo se encuentra enmarcado y delimitado por lo dispuesto en los Cánones de Ética Profesional.[50] En nuestra jurisdicción el contrato a base de honorarios contingentes está plenamente aceptado cuando es beneficioso para el cliente y cuando el mismo no es excesivamente oneroso.[51] En dicho contrato el abogado se hace partícipe del resultado del caso para percibir un por ciento de la cuantía que reciba su cliente.[52]

En el caso ante nuestra consideración, el querellado había representado a sus clientes, Audrey Ann Espina Patterson y Héctor Frederick Espina Patterson en el caso civil sobre división de herencia. Dicho caso terminó mediante sentencia dictada el 28 de abril de 1987, la cual adjudicó la estación de gasolina a favor de los clientes del querellado. Determinamos que el querellado no violó el Canon 25 del Código de Ética Profesional, supra, al radicar el 22 de diciembre de 1988 la demanda sobre cobro de honorarios profesionales. Para esa fecha su labor como abogado en el caso civil sobre división de herencia había culminado.[53]

Por último, se le imputa al querellado retener indebidamente el expediente de su cliente. El Canon 20 del Código de Ética Profesional, supra, establece, en lo aquí pertinente, lo siguiente:

> **Al ser efectiva la renuncia del abogado debe hacerle entrega del expediente a su cliente y de todo documento relacionado con el caso** y reembolsar inmediatamente cualquier cantidad adelantada que le haya sido pagada en honorarios por servicios que no se han prestado. (Énfasis nuestro.)

Insistimos que en esta jurisdicción un abogado **no tiene un derecho de retención sobre el expediente de su cliente.** Una vez el cliente le solicita la renuncia a su abogado, la

---

[49] Pérez v. Col. de Cirujanos Dentistas de P.R., 131 D.P.R. 545 (1992).

[50] Pérez v. Col. Cirujanos Dentistas de P.R., supra; Nassar Rizek v. Hernández, 123 D.P.R. 360 (1989).

[51] In re Clavell Ruiz, 131 D.P.R. 500 (1992).

[52] Pérez v. Col. Cirujanos Dentistas de P.R., supra.

[53] Véase la Determinación de Hechos del Comisionado Especial número veinticinco (25), Informe del Comisionado Especial, pág. 12.

entrega del expediente de su caso debe ser inmediata y sin dilación alguna.[54]  La falta del pago de los honorarios por servicios profesionales no exime a un abogado de su deber de devolver el expediente del caso.

Concluimos que el licenciado Criado Vázquez retuvo indebidamente el expediente del querellante.  Surge de los autos ante nos, que la entrega del expediente del caso sobre división de herencia fue requerida en cinco (5) ocasiones.  No fue hasta que este Tribunal le requirió su entrega el 8 de junio de 1989, mediante resolución a estos efectos, que el querellado devolvió dicho expediente.  Resolvemos que tal actuación violentó lo dispuesto por el Canon 20 del Código de Ética Profesional, supra.  Tomamos conocimiento de que el licenciado Criado Vázquez admitió en la vista ante el Comisionado Especial que había errado al no entregarle a los hermanos Espina Patterson el expediente, una vez le fue requerido.

Antes de determinar la sanción disciplinaria correspondiente, queremos reiterar que una transacción entre el abogado querellado y su cliente perjudicado no nos priva de ejercer nuestra jurisdicción disciplinaria.[55]

Hemos establecido que al determinar la sanción disciplinaria aplicable al abogado querellado, podemos tomar en cuenta factores como: la reputación del abogado en la comunidad; el previo historial de éste; si es su primera falta; la aceptación de la falta y su sincero arrepentimiento; si se trata de conducta aislada; el ánimo de lucro de su actuación; resarcimiento al cliente y cualquier otro atenuante o agravante que medie en los hechos particulares al caso.[56]

En el presente caso tomamos en consideración como agravantes los siguientes: (a) el querellado reiteradamente ha incumplido con su deber de mantener al día su fianza notarial; (b) de la misma manera ha incumplido reiteradamente con su deber de pagar su cuota de colegiación en tiempo; (c) fue amonestado por este Tribunal el 28 de diciembre de 1990, por incumplir con lo dispuesto en el Canon 21 del Código de Ética Profesional; (d) ha sido sancionado en dos (2) ocasiones por notificar tardíamente el otorgamiento de un poder a la Oficina de Inspección de Protocolos y Notaría.

III

En virtud de lo anterior, procede la suspensión indefinida del licenciado Criado Vázquez del ejercicio de la notaría y la suspensión de la abogacía por un término de dos

---

[54] In re Román Rodríguez, res. el 14 de noviembre de 2000, 2000 T.S.P.R. 168, 152 D.P.R. ____ (2000), 2000 J.T.S. 180; In re Irrizarry, González, res. el 24 de agosto de 2000, 2000 T.S.P.R. 128, 151 D.P.R. ____ (2000), 2000 J.T.S. 140; In re Avilés Vega, 141 D.P.R. 627 (1996); Nassar Rizek v. Hernández, supra.

[55] In re Román Rodríguez, supra.

[56] In re Díaz Ortiz, supra; In re Vélez Barlucea, supra; In re Padilla Rodríguez, res. el 18 de mayo de 1998, 98 T.S.P.R. 56, 145 D.P.R. ____ (1998), 98 J.T.S. 57; In re Ortiz Velázquez, res. el 15 de abril de 1998, 98 T.S.P.R.

(2) meses, y apercibirlo de su deber de cumplir a cabalidad en el futuro con los Cánones de Ética Profesional que rigen la profesión de abogado.

Se dictará sentencia de conformidad.

---

42, 145 D.P.R. _____ (1998), 98 JTS 44; In re Varcárcel Mulero I, 142 D.P.R. 41 (1996).

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

In re:

Javier Criado Vázquez                                    Conducta
                                      CP-98-6            Profesional


SENTENCIA

San Juan, Puerto Rico, a 29 de octubre de 2001.

Por los fundamentos expuestos en la Opinión <u>Per Curiam</u> que antecede, la cual se hace formar parte íntegra de la presente, se dicta Sentencia decretando la suspensión indefinida de Javier Criado Vázquez del ejercicio de la notaría y de la abogacía por un término de dos (2) meses, contados a partir de la notificación de esta Sentencia y hasta que otra cosa disponga este Tribunal.

Le imponemos a Javier Criado Vázquez el deber de notificar a todos sus cliente de su presente inhabilidad de seguir representándolos, les devuelva cualesquiera honorarios recibidos por trabajos no realizados e informe oportunamente de sus suspensión a los distintos foros judiciales y administrativos del país. Deberá, además, certificarnos dentro de un término de treinta (30) días, a partir de su notificación, el cumplimiento de estos deberes, notificando también al Procurador General.

La Oficina del Alguacil de este Tribunal procederá, de inmediato, a incautarse de la obra notarial de Javier Criado Vázquez, incluyendo su sello notarial, luego de lo cual entregará la misma a la Oficina de Inspección de Notarías para el correspondiente examen e informe a este Tribunal.

Se apercibe a Javier Criado Vázquez de su deber de cumplir a cabalidad en el futuro con los

Cánones de Ética Profesional que rigen la profesión de abogado.

Lo acordó y manda el Tribunal y certifica la Secretaria del Tribunal Supremo.  El Juez Presidente señor Andréu García está inhibido.  Los Jueces Asociados señores Rebollo López y Fuster Berlingeri no intervinieron.


Isabel Llompart Zeno
Secretaria del Tribunal Supremo