CP-2001-11                                                          1

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| In re:<br><br>    Nelson J. Alvarez Aponte | Querella<br><br>2002 TSPR 125<br><br>157 DPR _____ |

Número del Caso: CP-2001-11


Fecha: 19/septiembre/2002


Oficina del Procurador General:
                         Lcda. Cynthia Iglesias Quinones
                         Procuradora General Auxiliar


Abogado de la Parte Querellada:
                         Por Derecho Propio


Materia: Conducta Profesional
         (La suspensión es efectiva a partir del 20 de septiembre       de
         2002, fecha en que se le notificó al abogado el Per Curiam y
         Sentencia)


    Este documento constituye un documento oficial del Tribunal
    Supremo que está sujeto a los cambios y correcciones del proceso
    de compilación y publicación oficial de las decisiones del
    Tribunal. Su distribución electrónica se hace como un servicio
    público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

In re

| | | |
|---|---|---|
| Nelson J. Álvarez Aponte | CP-2001-11 | Conducta Profesional |

PER CURIAM

San Juan, Puerto Rico, a 19 de septiembre de 2002.

I

El 20 de octubre de 2000, la Sra. Alma Forastieri Brunet (en adelante "la quejosa") presentó ante nos una queja contra el Lic. Nelson J. Álvarez Aponte (en lo sucesivo "el querellado"). Alegó que en enero de 1999 contrató al querellado para la tramitación de una acción en cobro de dinero contra el Sr. Osvaldo Domenech. Señaló que, presentada la demanda, el querellado no le notificó ningún incidente referente al caso, excepto las gestiones para llegar a una transacción.

Una vez la quejosa advino en conocimiento, por otras fuentes, de que su caso estaba señalado

para juicio, se comunicó con el querellado, quien le manifestó que el Sr. Domenech convino en satisfacer la deuda sin llegar a juicio, de lo cual el tribunal estaba enterado. La quejosa adujo que, cuando le inquirió al querellado sobre el dinero, éste le informó que estaba esperando que el cheque se convirtiese en efectivo.

A preguntas de la quejosa, el querellado le explicó que el cheque se giró a nombre de él porque esa es la práctica para los abogados asegurar su pago. Según la quejosa, durante tres semanas, intentó infructuosamente que el querellado le entregase su dinero pero éste se excusaba diciendo que aún no había verificado con el banco si el cheque se había convertido en efectivo.[1] Por último, mencionó que el querellado se comprometió a acudir al banco el 19 de octubre de 2000 –el día antes de la presentación de esta queja– para obtener un giro a su favor y llevárselo esa noche a su residencia, lo cual no hizo.

Por su parte, el 22 de noviembre de 2000, el querellado presentó su *Contestación a la Querella*. Indicó que, para septiembre de 1998, la quejosa lo contrató para gestionar una acción en cobro de dinero. A esos fines, le entregó una factura mediante la cual le cobraba al Sr. Domenech  la  cantidad de $4,225.00 por la preparación de unos panfletos. Añadió que, prontamente, él le cursó una comunicación al Sr. Domenech reclamándole la referida cuantía. Señaló que, luego de varias gestiones para lograr una transacción, las cuales la quejosa rechazó, el 24 de noviembre de 1999, el querellado, en representación de la quejosa, sometió una moción solicitando que se señalase fecha para juicio. En vista de lo cual, el tribunal, mediante orden de 2 de febrero de 2000, fijó la conferencia con antelación al juicio para el 8 de mayo de 2000. Llegado el día, las partes informaron que se encontraban en negociaciones para transigir el asunto y, por tanto,

---

[1] A raíz de lo anterior, la quejosa, ya molesta, le dejó un mensaje al querellado indicándole que "los cheques aclaran [sic] en tres días y que su proceder me estaba incomodando." Queja, pág. 1.

el tribunal reseñaló la vista en su fondo para el 22 de agosto de 2000, la cual posteriormente se pospuso para el 4 de octubre de 2000.

El querellado también indicó que, durante septiembre de 2000, el Sr. Domenech hizo un nuevo ofrecimiento de transacción de $3,000.00, el cual la quejosa finalmente aceptó. El 3 de octubre –un día antes del señalamiento– las partes firmaron la estipulación.[2] Al día siguiente, durante la vista en su fondo, el abogado del Sr. Domenech compareció ante el tribunal, excusó al querellado por éste encontrarse atendiendo otro señalamiento y le informó al tribunal de instancia que las partes llegaron a un acuerdo transaccional. Luego de someter la estipulación y copia del cheque girado, el tribunal dictó sentencia aprobando el acuerdo.

El querellado adujo en su contestación que depositó el cheque para después pagarle a la quejosa. De igual forma señaló que, el 23 de octubre de 2000, luego de tomar unas vacaciones, le entregó a la quejosa un giro por la suma de $2,000.00,[3] los documentos solicitados y la factura o recibo correspondiente.[4]

Indicó, también, que el 25 de octubre de 2000 recibió una carta de la quejosa señalando:

> Tengo en mi poder copia del cheque que le fue entregado a usted por la cantidad de $3,000 el día 3 de octubre –no a nombre suyo como me alegó– sino a nombre mío.
> ...
>
> Los $2,000 que me hizo llegar hoy 25 de octubre, 22 días después de haber cobrado el dinero, ya no son aceptables.
> ...

---

[2] Cabe señalar que, en la copia de la estipulación sólo aparece la firma del querellado, no así la del representante legal del Sr. Domenech.

[3] Cabe indicar que, a pesar de que el Sr. Domenech le entregó al querellado la suma de $3,000.00, este último le entregó a la quejosa sólo $2,000.00 y retuvo los restantes $1,000.00 por concepto de los servicios profesionales prestados.

[4] El querellado estuvo de vacaciones desde el 13 hasta el 18 de octubre de 2000. El día 20 de ese mes, la quejosa presentó la queja de epígrafe. Sin embargo, la queja no se le notificó al querellado hasta el 31 de octubre, por lo cual, cuando éste le entregó a la

No quiero hacerle daño pero usted deberá compensarme los daños ocasionados: "daños morales, angustias mentales, sufrimientos emocionales, gastos, intereses y recargos.["] Los cuales totalizan la cantidad de $10,000 más el pago total del cheque #0299 de Island Propoperties [sic] SE por la cantidad de $3,000 girado contra la cuenta 021502341 del Banco Santander de Hato Rey, que conformó el anejo B de la [m]inuta fechada 4 de octubre de 2000.

No entregaré al Tribunal Superior el documento que lo incrimina hasta recibir una respuesta suya, la cual espero se produzca no más tarde del próximo viernes 27 de octubre, ya que el próximo lunes, la copia del cheque estará formando parte de su expediente.

En respuesta a estas alegaciones, el querellado expresó que durante todo el proceso mantuvo informada a la quejosa, incluso sobre la transacción. Señaló que fue ésta quien autorizó el acuerdo. Añadió que nunca le indicó a la quejosa una fecha exacta para el pago y que "[e]l recibir un cheque para beneficio de un cliente no es anti-ético, siempre que se le paga [sic] al cliente su participación."[5] De igual manera, manifestó que "[d]educir honorarios del pago recibido tampoco es ilegal cuando es adeudado."[6]

Referimos este asunto al Procurador General para la investigación e informe correspondiente, el cual presentó el 9 de febrero de 2001. No obstante, posteriormente, el Procurador General enmendó su informe a los únicos fines de indicar que el querellado sometió la información requerida. El Procurador General concluyó que el querellado desplegó conducta contraria a los Cánones 19 y 23 de Ética Profesional, 4 L.P.R.A. Ap. IX. En específico, indicó que el querellado violó el deber fiduciario que le impone el Canon 23, *supra*, al depositar en su cuenta un cheque girado a favor de la quejosa. Empero, señaló que para considerar la queja desde su justa

quejosa su dinero entre los días 24 y 25 de octubre de 2000, desconocía la existencia de dicho procedimiento.

[5] *Contestación a la Querella* presentada por el querellado el 22 de noviembre de 2000, pág. 6.

[6] *Íd.*

perspectiva era necesario que le ordenásemos al querellado que sometiera copia del endoso del cheque depositado en su cuenta.

En relación con la alegación de la quejosa de que no se le informó sobre la vista en su fondo, el Procurador General expresó que si bien es cierto que tal señalamiento era uno importante, dado las circunstancias particulares del caso –donde hubo varias ofertas de transacción–, "tal omisión por parte del licenciado Álvarez Aponte no representó daños a la quejosa."[7]

En cumplimiento con nuestro requerimiento, el 29 de marzo de 2001, el querellado se expresó en torno al Informe Enmendado del Procurador General. Adujo que el cheque girado a favor de la quejosa fue depositado en una cuenta comercial, no en su cuenta personal. Señaló, además, que cuando le informó a la quejosa que había depositado el cheque y que estaba en espera de que éste se convirtiese en efectivo, la quejosa no se opuso. Sobre este punto, expuso que acatará el consejo del Procurador General de no depositar ningún pago de una sentencia. Por otra parte, indicó que no le participó a la quejosa el señalamiento de la vista en su fondo porque el día antes se gestionaría el pago de la transacción, de lo cual la quejosa tenía conocimiento. También, acogiendo lo dispuesto por el Procurador General, señaló que ello no le causó ningún daño a la quejosa.

Por último, manifestó que la intención de la quejosa era obtener $11,000.00 amenazándolo con la presentación de una querella. En vista de todo lo anterior, solicitó que determinásemos que no incurrió en violación ética alguna.

Mediante resolución de 27 de abril de 2001, le ordenamos al Procurador General presentar la querella correspondiente, la cual finalmente presentó el 18 de diciembre de 2001. Le imputó al querellado la violación del Canon 23 de Ética Profesional, *supra*, por haber depositado en su cuenta comercial, sin el consentimiento

---

[7] Informe Enmendado del Procurador General presentado el 21 de febrero de 2001.

de la quejosa, un cheque girado a favor de ésta por la suma de $3,000.00. También le imputó haber violentado el Canon 19 de Ética Profesional, *supra*, por no informarle a la quejosa del señalamiento de la vista en su fondo ante el Tribunal de Primera Instancia.

Mediante resolución de 22 de febrero de 2002, nombramos Comisionado Especial al Hon. Agustín Mangual Hernández y le encomendamos recibir la prueba y rendir un informe con sus determinaciones de hecho y sus recomendaciones, el cual presentó el 6 de mayo de 2002. Las determinaciones de hecho que surgen de este informe coinciden con las determinaciones que hizo el Procurador General. No habiéndose presentado objeción a dicho informe, este asunto quedó sometido en los méritos, por lo que resolvemos.

II

El Canon 23 de Ética Profesional, *supra,* dispone en lo pertinente:

> [l]a naturaleza fiduciaria de las relaciones entre abogado y cliente exige que éstas estén fundadas en la honradez absoluta. En particular, debe darse pronta cuenta del dinero u otros bienes del cliente que vengan a su posesión y no debe mezclarlos con sus propios bienes ni permitir que se mezclen.

En virtud de lo dispuesto en el Canon 23, *supra*, los abogados deben velar porque la relación abogado cliente sea transparente. *In re Rivera Irizarry*, res. el 21 de noviembre de 2001, 155 D.P.R. ___, 2001 T.S.P.R. 159, 2001 J.T.S. 162. Su naturaleza fiduciaria exige que exista una confianza y una absoluta honradez entre el abogado y el cliente, especialmente en los asuntos de carácter económico. *Íd.*

A tenor de lo anterior, el abogado debe rendir cuentas de cualquier dinero o bien de un cliente que esté en su posesión porque "[l]a retención de cualquier cantidad de dinero, perteneciente a sus clientes, trastoca e infringe los postulados del Canon 23 de Ética

Profesional, *ante*, y demuestra un menosprecio hacia sus deberes como abogado." *In re Rivera Irizarry,* supra, pág. 437. (Citas omitidas.)

Sabido es que, la mera retención de un abogado de fondos pertenecientes a un cliente justifica una sanción, independientemente de que el abogado los hubiera devuelto y de que los hubiera retenido sin intención de apropiárselos. *In re Rivera Irizarry,* supra; *In re Feliciano Rodríguez*, res. el 26 de abril de 2000, 150 D.P.R. ___, 2000 T.S.P.R. 70, 2000 J.T.S. 80. En efecto, "la dilación en la devolución de los fondos es causa suficiente para tomar medidas disciplinarias contra el abogado." *In re Rivera Irizarry,* supra, pág. 437; *In re Feliciano Rodríguez*, supra, pág. 1079.

A su vez, el Canon 19 de Ética Profesional, *supra*, le impone al abogado un deber de mantener a su cliente informado del trámite de su caso. En lo pertinente, el Canon 19, *supra,* reza:

> [e]l abogado debe mantener a su cliente siempre informado de todo asunto importante que surja en el desarrollo del caso que le ha sido encomendado.
>
> Siempre que la controversia sea susceptible de un arreglo o transacción razonable debe aconsejar al cliente el evitar o terminar el litigio, y es deber del abogado notificar a su cliente de cualquier oferta de transacción hecha por la otra parte.

A tenor del Canon 19, *supra*, el abogado tiene un deber ineludible de mantener informado a su cliente de cualquier asunto importante que surja en el trámite de su caso. *In re Criado Vázquez*, res. el 29 de octubre de 2001, 155 D.P.R. ___, 2001 T.S.P.R. 154, 2001 J.T.S. 157. Ese deber es un elemento imprescindible en la relación fiduciaria abogado cliente. *Íd.*

Nos resta aplicar los principios enunciados a la situación de autos.

III

En el presente caso, el querellado recibió del Sr. Domenech un cheque de transacción a nombre de la quejosa por la cantidad de $3,000.00. No obstante, el querellado no le informó a la quejosa de

la existencia de ese cheque. En su lugar, el querellado lo endosó y lo depositó en su cuenta comercial.[8] El querellado retuvo el dinero de la quejosa durante un término aproximado de 22 días. Sin embargo, en lugar de entregarle, aunque tardíamente, los $3,000.00, le entregó $2,000.00 y retuvo los restantes $1,000.00 en pago de los servicios profesionales prestados.

El querellado no debió, sin autorización de la quejosa, endosar el cheque para depositarlo en su cuenta. Tampoco debió deducir de la suma retenida la cuantía correspondiente a sus honorarios. En *In re Fernández Paoli*, 141 D.P.R. 10 (1996) reiteramos que, aun cuando un cliente hubiese pactado pagarle al abogado sus honorarios tan pronto el deudor del cliente pague una suma sustancial, ello no implica que el abogado, sin el consentimiento del cliente, puede cobrar los honorarios por su cuenta. Véase, además, *In re Morales Soto,* 134 D.P.R. 1012 (1994).

Es menester puntualizar que el querellado, en su *Contestación a la Querella*, intentó justificar su comportamiento con las siguientes expresiones:

> [e]l recibir un cheque para el beneficio de un cliente no es anti-ético, siempre que se le paga al cliente su participación. Deducir honorarios del pago recibido tampoco es ilegal cuando es adeudado….Lo importante es pagarle al cliente en un término razonable.

Tales expresiones son totalmente opuestas a lo dispuesto en el Canon 23, *supra.* Es norma establecida que los abogados no deben cobrar indebidamente los honorarios de abogado, retener sin autorización dinero de sus clientes, ni disponer de éste impropiamente. *In re Marrero Figarella,* 146 D.P.R. 541 (1998). Al actuar de ese modo, mancilló la imagen de la clase togada y violentó el deber fiduciario que debe existir en toda relación abogado cliente. Dicho lo anterior, concluimos que el querellado infringió

---

[8] El endoso consistió en que el querellado escribió en molde el nombre de la quejosa y, junto a las letras P/C, las cuales de ordinario significan "por conducto de", firmó su nombre.

el Canon 23, *supra,* al así actuar. Reconocemos como atenuantes que el querellado ya le devolvió a la quejosa su dinero y que lo retuvo durante aproximadamente 22 días.

Con respecto al Canon 19, *supra*, decretamos que el querellado debió informarle a la quejosa del señalamiento de la vista en su fondo, independientemente de que existiese una alta probabilidad de que el caso se transigiera. El caso pertenece al cliente y éste tiene derecho a estar al tanto de todo trámite importante dentro del mismo. El mero hecho de que esa omisión no tuvo mayores consecuencias no exime al querellado de responsabilidad.

Por los fundamentos antes esbozados, se dictará Sentencia ordenando la suspensión inmediata de Nelson J. Álvarez Aponte del ejercicio de la abogacía por el término de seis (6) meses, contados a partir de la notificación de la Sentencia.

Le imponemos el deber de notificar a todos sus clientes de su presente inhabilidad de continuar representándolos, les devuelva cualesquiera honorarios recibidos por trabajos no realizados, e informe oportunamente de su suspensión a los distintos foros judiciales y administrativos del país. Deberá, además, certificarnos dentro del término de treinta (30) días, a partir de la notificación de la Sentencia, el cumplimiento de estos deberes, notificando también al Procurador General.

Se dictará Sentencia de conformidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

In re

    Nelson J. Álvarez Aponte        CP-2001-11      Conducta
                                                   Profesional

SENTENCIA

San Juan, Puerto Rico, a 19 de septiembre de 2002.

**Por los fundamentos expuestos en la Opinión Per Curiam que antecede, la cual se hace formar parte íntegra de la presente, se dicta Sentencia ordenando la suspensión inmediata de Nelson J. Álvarez Aponte del ejercicio de la abogacía por el término de seis (6) meses, contados a partir de la notificación de la Sentencia. Le imponemos el deber de notificar a todos sus clientes de su presente inhabilidad de continuar representándolos, les devuelva cualesquiera honorarios recibidos por trabajos no realizados, e informe oportunamente de su suspensión a los distintos foros judiciales y administrativos del país. Deberá, además, certificarnos dentro del término de treinta (30) días, a partir de la notificación de la Sentencia, el cumplimiento de estos deberes, notificando también al Procurador General.**

**Lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo.**

                                        Patricia Otón Olivieri
                              Secretaria del Tribunal Supremo