*In re* RÍOS PÉREZ, querellado.

*Número:* CP-2008-12          *Resuelto:* 15 de julio de 2010

*Maite D. Oronoz Rodríguez*, procuradora general interina, *Minnie H. Rodríguez López*, procuradora general auxiliar, *Zaira E. Girón Anadón*, subprocuradora general, e *Ileana Oliver Falero*, subprocuradora general interina; *Carmen I. Navas, Ricardo Alfonso García* y *Manuel A. Rodríguez Banchs*, abogados del querellado; *Crisanta González Seda*, comisionada especial, en informe; *Juan Carlos Ríos Pérez, pro se.*

PER CURIAM:

# I

El Lcdo. Juan Carlos Ríos Pérez fue admitido al ejercicio de la abogacía el 15 de enero de 1987 y a la notaría el 6 de julio de 1995.

El 12 de junio de 2008, el Procurador General presentó ante nos una querella contra el licenciado Ríos Pérez. En la misma, se le imputó haber aceptado la representación legal del Ing. Kevin Llanés Santos (quejoso) y desatender por completo el caso para el cual fue contratado. Por estos hechos, el Procurador General presentó querella contra el licenciado Ríos Pérez por violaciones a los Cánones 12, 18, 19 y 20 del Código de Ética Profesional. 4 L.P.R.A. AP. IX.

El 20 de agosto de 2008, el licenciado Ríos Pérez contestó la querella presentada. En su contestación alegó que de su conducta "sólo procedería una amonestación o censura como sanción proporcionada". Contestación a la querella, pág. 11. El 18 de noviembre de 2008 nombramos a la Hon. Crisanta González como Comisionada Especial para que recibiera prueba y nos rindiera un informe sobre la querella. El 30 de septiembre de 2009, la Comisionada Especial rindió el informe solicitado.

Luego de examinar la prueba documental y testifical, la Comisionada Especial realizó las determinaciones siguientes:

El 26 de octubre de 1999, el licenciado Ríos Pérez suscribió un contrato de servicios legales con el quejoso. El día

en que se suscribió el contrato, el quejoso pagó $2,500 por honorarios de abogado adelantados. Los honorarios de abogado eran para atender un caso ante el Tribunal de Primera Instancia. En ese caso, el quejoso fue demandado por incumplimiento contractual, y daños y perjuicios.

El 24 de enero de 2000, la parte demandante en ese pleito solicitó que se le anotara rebeldía al quejoso ya que no había contestado la demanda. El 27 de enero de 2000, el licenciado Ríos Pérez, en representación del quejoso, presentó la contestación a la demanda y una demanda contra HF Mortagage como coparte.

El 14 de marzo de 2000, HF Mortgage presentó una moción de sentencia sumaria. Entonces, el 31 de julio de 2000, el licenciado Ríos Pérez sometió su oposición a la sentencia sumaria. El 2 de octubre de 2000 se celebró una vista ante el Tribunal de Primera Instancia y el licenciado Ríos Pérez indicó que presentaría otros interrogatorios y tomaría una deposición. El tribunal solicitó a las partes que presentaran proyectos de determinaciones de hechos y conclusiones de derecho respecto a la solicitud de sentencia sumaria. Además, ese foro fijó la conferencia con antelación a juicio para el 16 de agosto de 2001. A esa vista no compareció ninguna de las partes.

La deposición no se efectuó y el tribunal señaló juicio para el 24, 25 y 26 de octubre de 2001. El 27 de agosto del mismo año, el licenciado Ríos Pérez presentó una moción en la que se excusó por su incomparecencia e informó que presentaría una demanda contra tercero. Luego, el 24 de octubre de 2001, solicitó la suspensión de la vista pautada hasta que presentara la demanda contra tercero. Esa demanda fue presentada el 30 de noviembre de 2001.

Luego de varios pormenores, el Tribunal de Primera Instancia señaló vista para el 29 de agosto de 2002. El licenciado Ríos Pérez no compareció a esa vista y la parte demandada contra tercero (HF Mortgage) informó que no se le habían contestado sus interrogatorios y que el quejoso

no había comparecido a la toma de deposición. Ante esto, el foro primario fijó vista para el 21 de enero de 2003. Además, advirtió que de no comparecer el ahora quejoso, se le anotaría la rebeldía, se eliminarían sus alegaciones y se le impondrían sanciones adicionales. A esa vista compareció el licenciado Ríos Pérez y se señaló otra audiencia para el 31 de marzo de 2003. A esa última vista, el licenciado Ríos Pérez no compareció.

En otra audiencia efectuada el 12 de junio de 2003, el licenciado Ríos Pérez informó que el descubrimiento de prueba no había terminado. Por ello, se señaló la conferencia con antelación a juicio para el 22 de octubre de 2003, y el juicio para el 4 y 5 de diciembre de 2003. El 31 de julio de 2003, la parte tercera demandada solicitó sentencia sumaria a su favor y el 3 de octubre de 2003 solicitó que se dictara la misma ya que el licenciado Ríos Pérez no había presentado a nombre del quejoso Llanés Santos su oposición ni había sometido los documentos que se le solicitaron. El 22 de octubre de 2003, el foro primario le ordenó al licenciado Ríos Pérez que sometiera copia de la deposición, la oposición a la sentencia sumaria presentada por la parte tercera demandada y la entrega de su parte del informe de conferencia entre abogados. En esa orden se apercibió de la imposición de sanciones de no producir lo solicitado en un término de treinta días.

Luego de pasar ese término, el 6 de febrero de 2004, la parte tercera demandada reiteró su solicitud de sentencia sumaria, ya que no se había presentado una oposición. El 27 de febrero de 2004, el licenciado Ríos Pérez compareció a la vista señalada y se le concedieron quince días para expresar la posición de su representado sobre la solicitud de sentencia sumaria. Luego de varios trámites, el 24 de junio de 2004, la parte tercera demandada presentó su cuarta solicitud para que se dictara sentencia sumaria, pues el licenciado Ríos Pérez no había presentado la oposición a nombre del señor Llanés Santos.

En la vista pautada para el 28 de octubre de 2004, el licenciado Ríos Pérez no compareció y el foro primario declaró con lugar la solicitud de sentencia sumaria y anotó la rebeldía. El juicio en su fondo fue señalado para el 6 de diciembre de 2004. El quejoso se enteró de la vista por el portal electrónico del Tribunal.

Tras varios intentos fallidos, el quejoso logró comunicarse con el licenciado Ríos Pérez y este último le indicó que haría gestiones para que se levantara la rebeldía. Para el 19 de noviembre de 2004, el licenciado Ríos Pérez no había realizado gestión alguna para levantar la anotación de rebeldía. Sin embargo, el licenciado Ríos Pérez le indicó al quejoso que lo iba a visitar con relación a ello. Empero, el licenciado Ríos Pérez no hizo la visita ni realizó gestión alguna ante el tribunal.

El 23 de noviembre de 2004, el quejoso presentó una solicitud por derecho propio para que se levantara la rebeldía impuesta y explicó lo sucedido con el licenciado Ríos Pérez. A la Vista de 6 de diciembre de 2004, el quejoso acudió con otro abogado, aunque éste no pudo asumir su representación legal. El tribunal pospuso la vista para que el licenciado Ríos Pérez presentara su renuncia al caso. El 27 de diciembre de 2004, el quejoso acudió ante el Tribunal de Primera Instancia por derecho propio e indicó que había hecho esfuerzos por localizar al licenciado Ríos Pérez, pero que éste no tenía secretaria, ni número de teléfono y el de su residencia estaba desconectado. Además, informó que le envió una carta para que renunciara a su representación y que, a pesar de ello, el licenciado Ríos Pérez no había comparecido al tribunal a renunciar. Este último no contestó esa misiva.

El 13 de enero de 2005, el Tribunal de Primera Instancia concedió veinte días al licenciado Ríos Pérez para responder a una moción del demandado o lo relevaría del caso. El 11 de febrero de 2005, el quejoso solicitó al tribunal que relevara al licenciado Ríos Pérez de la representación

legal. El 17 de febrero de 2005, el licenciado Ríos Pérez compareció a la vista señalada y renunció a la representación legal. Ante esto, el foro de primera instancia permitió la nueva representación legal del quejoso. Además, dejó sin efecto la determinación de rebeldía y señaló una vista para el 28 de mayo de 2005. Posteriormente, las partes llegaron a un acuerdo. Cabe destacar que el quejoso pagó la totalidad de los honorarios pactados con el licenciado Ríos Pérez y los de su nueva representación legal para el mismo caso.

## II

El Código de Ética Profesional son las normas mínimas de conducta que deben seguir los abogados. *In re Filardi Guzmán*, 144 D.P.R. 710 (1998); *In re Matos González*, 149 D.P.R. 817 (1990).

El Canon 12 del Código de Ética Profesional, *supra*, le impone a todo letrado el deber de tramitar las causas de forma responsable, con puntualidad y diligencia. *In re Vélez Báez*, 176 D.P.R. 201 (2009). La función de un abogado dentro del sistema de justicia le obliga a desempeñarse con la mayor diligencia, responsabilidad e integridad. *In re Rosado Nieves*, 159 D.P.R. 746 (2003).

Parte de ese deber que impone el Canon 12 del Código de Ética Profesional es que la conducta de un abogado no entorpezca la resolución de un caso. *In re Vélez Báez*, supra. Las incomparecencias injustificadas del abogado a las vistas señaladas por el tribunal y las actuaciones que pongan en riesgo la acción de su cliente, son violaciones patentes a dicho postulado ético. *In re Cuevas Velázquez*, 174 D.P.R. 433 (2008). La falta de diligencia en la tramitación de los casos y el incumplimiento con las órdenes del tribunal constituyen un patrón de conducta sumamente irresponsable. Íd. Véanse, además: *In re Rosado Nieves*, supra; *In re Grau Díaz*, 154 D.P.R. 70 (2001).

Por su parte, el Canon 18 del Código de Ética Pro-

fesional, *supra*, dispone que un abogado tiene que defender los derechos de su cliente de forma diligente, desplegando en cada caso su más profundo saber y actuando con responsabilidad. *In re Cuevas Velázquez*, supra. Cuando un abogado incumple con las órdenes del tribunal, falta al deber de mantener notificado a su cliente, y por su descuido y negligencia lo expone a la pérdida de sus derechos; el abogado entonces incurre en una violación del Canon 18 de Ética Profesional, *supra*. Íd.

■ Un abogado incumple con los postulados más básicos del Canon 18 del Código de Ética Profesional, *supra*, cuando acepta representar a un cliente y no hace la gestión profesional adecuada. *In re Águila López*, 152 D.P.R. 49 (2000). La representación legal adecuada requiere que se ejerza la profesión con celo, cuidado y prudencia. *In re Acosta Grubb*, 119 D.P.R. 595 (1987). Una vez el abogado acepta representar a un cliente, tiene la responsabilidad de descargar su labor con rapidez y eficiencia. Íd.

■ El Canon 19 del Código de Ética Profesional, *supra*, exige que el abogado mantenga comunicación efectiva con su cliente. Hemos reiterado que esta obligación es separada e independiente de su deber de diligencia y eficiencia. *In re Cuevas Velázquez*, supra. Ese Canon requiere que el abogado mantenga informado a su cliente de las gestiones realizadas y del desarrollo del asunto a su cargo, consultándole cualquier duda sobre asuntos que no caigan en el ámbito discrecional del abogado. *In re Acosta Grubb*, supra.

■ El abogado debe desplegar sus funciones de forma diligente, de modo que evite dilaciones indebidas y mantenga a su cliente informado. Íd. El deber de comunicación efectiva es imprescindible en la relación fiduciaria que caracteriza el vínculo abogado-cliente. *In re Criado Vázquez*, 155 D.P.R. 436 (2001). Se incumple el Canon 19 cuando no se atienden los reclamos de información del cliente, no se le

informa del resultado adverso, no se mantiene al cliente informado del estado o de la situación procesal del pleito, o se le niega al cliente información de su caso. *In re Acevedo Álvarez*, 143 D.P.R. 293 (1997); *In re Vélez Valentín*, 124 D.P.R. 403 (1989).

■ Por último, el Canon 20 del Código de Ética Profesional, *supra*, establece el procedimiento que debe seguir un abogado para renunciar a la representación legal de su representado. Ese procedimiento es de vital importancia porque, de no seguirse, se pone en riesgo la defensa del cliente. Cuando un abogado debe renunciar a un caso tiene la responsabilidad de obtener el permiso del tribunal y tomar aquellas medidas razonables que sean necesarias para evitarle perjuicios al cliente. *In re Acosta Grubb*, supra.

### III

Tras analizar las normas expuestas y los hechos de este caso, debemos concluir, al igual que la Comisionada Especial, que el licenciado Ríos Pérez violó las normas dispuestas por los Cánones 12, 18, 19 y 20 del Código de Ética Profesional, *supra.*

El licenciado Ríos Pérez acepta que su conducta causó dilación en los procesos ante el tribunal. El hecho de que esto no haya causado lo que él llama "consecuencias de mayor impacto" no le exonera de las sanciones disciplinarias correspondientes. De las actuaciones del licenciado Ríos Pérez se desprende un patrón de ausencias, descuido y desatención con el caso para el cual fue contratado. El licenciado Ríos Pérez incumplió en varias ocasiones con su deber de diligencia ante el tribunal. Este comportamiento condujo a la anotación de rebeldía contra el quejoso Llanés Santos.

Notamos que el licenciado Ríos Pérez aceptó ante la Co-

misionada Especial que no cumplió con la orden de contestar la solicitud de sentencia sumaria porque surgió en el descubrimiento de prueba que la solicitud tenía méritos. Una vez más denota una conducta reñida con nuestros cánones de ética profesional. De ser cierta esa alegación, el licenciado Ríos Pérez fue negligente y causó la dilación de los procesos ante el tribunal al no desistir de un pleito frívolo tan pronto tuvo conocimiento de esto. Esta conducta, de por sí, viola los Cánones 12 y 18 del Código de Ética Profesional, *supra.*

El licenciado Ríos Pérez demostró un patrón de conducta descuidada y negligente desde que anunció al tribunal que presentaría una demanda contra tercero. El Tribunal de Primera Instancia le advirtió en varias ocasiones de la anotación de rebeldía y éste no corrigió su conducta. Cuando un abogado acepta defender los derechos de su representado tiene el deber indelegable de realizar la gestión de forma diligente y responsable.

■   La función del abogado como parte de la administración de la justicia requiere que éste vele por los intereses de su cliente con celo y esmero. Esa gestión requiere que el abogado mantenga informado adecuadamente a su cliente. Después de todo, son los derechos del cliente los que se dilucidan ante el tribunal. Es inaceptable que un cliente tenga que enterarse de una vista y de la anotación de rebeldía por otras fuentes ajenas a su representación legal. Todo abogado debe asegurar que su cliente cuente con la información suficiente para que pueda comunicarse con él. En varias ocasiones, el quejoso trató de localizar al licenciado Ríos Pérez pero su teléfono estaba desconectado y tampoco pudo localizarlo por el teléfono celular. El licenciado Ríos Pérez tampoco respondió a la carta que le envió el quejoso. Al así actuar, el licenciado Ríos Pérez no cumplió con la obligación ética que le impone el Canon 19.

Por último, de los hechos se deduce claramente que el

licenciado Ríos Pérez no siguió el proceso establecido por el Canon 20 del Código de Ética Profesional, *supra*, para renunciar a la representación legal del señor Llanés Santos. Desde el inicio, el licenciado Ríos Pérez dilató innecesariamente la renuncia a la representación legal. Ante los hechos de este caso y la solicitud del quejoso, el abogado debió cumplir con los requisitos del Canon 20 con premura y diligencia, pero no fue así. Al no poder ser localizado, el licenciado Ríos Pérez retrasó la entrega del expediente del caso y el cambio de representación legal. Todo esto retrasó los trámites del caso y obró en perjuicio del quejoso y de la administración de la justicia.

El licenciado Ríos Pérez conoció de la intención del quejoso de relevarle de la representación legal desde el 23 de noviembre de 2004, fecha en que se le notificó del escrito presentado al tribunal. Sin embargo, no fue hasta el 17 de febrero de 2005 —y después de varias gestiones del quejoso y del tribunal— que el licenciado Ríos Pérez presentó su renuncia. El Canon 20 del Código de Ética Profesional, *supra*, requiere la autorización del tribunal para renunciar a la representación legal. Al dilatar injustificadamente este procedimiento, el licenciado Ríos Pérez violó la norma ética aludida.

■ Para determinar la sanción que procede contra un abogado, deben evaluarse los factores siguientes: la buena reputación del abogado en la comunidad; su historial previo; si ésta constituye su primera falta y si alguna parte ha resultado perjudicada; la aceptación de la falta y su sincero arrepentimiento; si se trata de una conducta aislada; el ánimo de lucro que medió en la actuación del abogado; resarcimiento al cliente, y cualquiera otra consideración —ya bien atenuante o agravante— que surja de los hechos. *In re Quiñones Ayala*, 165 D.P.R. 138 (2005).

En el pasado, el licenciado Ríos Pérez ha sido objeto de sanciones por violaciones al Código de Ética Profesional.

En *In re Ríos Pérez*, 167 D.P.R. 386 (2006), lo separamos indefinidamente por desatender los requerimientos de este Tribunal y del Procurador General. Lo reinstalamos el 22 de diciembre de 2006. *In re Ríos Pérez*, 169 D.P.R. 771 (2006).

Tras evaluar todos los factores antes discutidos, se suspende al licenciado Ríos Pérez del ejercicio de la abogacía y notaría por seis meses.

## IV

Por los fundamentos antes expuestos, *se dictará Sentencia en la que se suspende de inmediato al Lcdo. Juan Carlos Ríos Pérez del ejercicio de la abogacía y notaría por el término de seis meses. El Alguacil de este Tribunal deberá incautar la obra y el sello notarial del licenciado Ríos Pérez. Se le impone al abogado querellado el deber de notificar a todos sus clientes de su inhabilidad para continuar representándolos, devolverles cualesquiera honorarios recibidos por trabajos no realizados e informar oportunamente de su suspensión a los foros judiciales y administrativos. Además, tiene la obligación de acreditar y certificarnos el cumplimiento con lo anterior dentro del término de treinta días a partir de la notificación de esta opinión "per curiam" y Sentencia.*

*Se dictará sentencia de conformidad.*

La Jueza Asociada Señora Pabón Charneco limitaría la sanción a un término de suspensión de tres meses. El Juez Asociado Señor Kolthoff Caraballo no interviene.