per curiam:
Una vez más nos vemos obligados a ejercer nuestra facultad disciplinaria en contra de un abogado por considerar que sus actuaciones se apartan de las normas éticas que rigen el ejercicio de la profesión de la abogacía. Por las razones que se esbozan a continuación, ordenamos *193 la suspensión inmediata del Ledo. Ismael Cuevas Borrero del ejercicio de la abogacía y la notaría por dos meses. Vea-mos los hechos que dieron origen a la querella de autos.
I
El Ledo. Ismael Cuevas Borrero fue admitido al ejercicio de la abogacía el 17 de enero de 1995 y a la práctica de la notaría el 20 de octubre delmismo año. El trasfondo de este caso se inicia cuando el 30 de marzo de 2006, el Sr. Santos Ayala Nieves (querellante) presentó una queja ante este Tribunal en la que alegó que el licenciado Cuevas Borrero había incurrido en conducta antiética mientras lo repre-sentaba legalmente en un recurso apelativo. Luego de exa-minar la queja presentada, decidimos referirla a la Oficina del Procurador General y eventualmente le ordenamos que presentara una querella. Como consecuencia, el Procura-dor General presentó la correspondiente querella contra el letrado. En esta se le imputó la violación de los Cánones 9, 12, 18, 19 y 35 del Código de Ética Profesional, 4 L.P.R.A. Ap. IX.
Los fundamentos de esta querella surgen cuando al li-cenciado Cuevas Borrero lo contrató el querellante para que lo defendiera de una acusación en su contra por los delitos de asesinato en primer grado y violación a la Ley de Armas de Puerto Rico. En atención a esos hechos, el 15 de agosto de 2001 se le encontró culpable por el delito de ase-sinato en segundo grado y fue condenado a treinta años de reclusión. Como resultado del fallo condenatorio, el 14 de septiembre 2001, el licenciado Cuevas Borrero presentó un recurso de apelación ante el Tribunal de Apelaciones. En-tre los errores allí planteados se impugnó la apreciación de la prueba que hizo el foro primario. Sin embargo, el recurso no fue perfeccionado, ya que el querellado no presentó la exposición narrativa de la prueba según lo ordenan las re-glas del Tribunal de Apelaciones.
*194 Subsiguientemente, el foro apelativo intermedio le con-cedió un término al querellado para que presentara la ex-posición narrativa de la prueba, pero este incumplió con ese término, al igual que con las múltiples prórrogas que se le concedieron a tales efectos. Ante la reiterada inacción del letrado en el trámite del recurso apelativo, el Tribunal de Apelaciones procedió a desestimar la petición.
De acuerdo con los hechos enunciados, se le imputó al querellado la violación de varios preceptos del Código de Ética Profesional. Referente al Canon 9, supra, se indicó que este desatendió e incumplió las órdenes que emitiera el Tribunal Supremo durante el proceso de la queja in-coada en su contra, al igual que aquellas emitidas por el Tribunal de Apelaciones en relación con el recurso de ape-lación presentado ante ese foro.
En lo concerniente a la infracción al Canon 12, supra, se alegó que la conducta del querellado causó una indebida dilación en la tramitación y solución del caso.
Por otro lado, en cuanto a la violación al Canon 18, supra, en la querella se señaló que el licenciado no defendió adecuadamente los intereses de su cliente y que su reite-rado incumplimiento con las órdenes emitidas por el Tribunal de Apelaciones ocasionaron la desestimación del re-curso de apelación. Además, se adujo que el querellado quebrantó el Canon 19, supra, al no informarle a su cliente que el recurso de apelación se había desestimado.
Asimismo, en la querella se le imputó al licenciado Cue-vas Borrero violar el deber de sinceridad y honestidad im-puesto por el Canon 35, supra, cuando en su contestación a la queja ofreció versiones encontradas sobre su relación con el querellante Ayala Nieves. Específicamente, se ase-veró que el querellado expresó que se le contrató para que llevara la apelación del caso y luego se contradijo al afir-mar que no existía un contrato para la representación legal en la etapa apelativa.
*195 Posteriormente, el querellado presentó ante nos su con-testación a la querella. En su comparecencia admitió su inacción ante el Tribunal de Apelaciones durante el trá-mite del recurso apelativo. No obstante, este justificó su proceder aduciendo que no tenía autorización de su cliente para instar el recurso de apelación. Añadió que su gestión a esos efectos solo tenía el propósito de preservar el dere-cho de apelación del señor Ayala Nieves. Así también, ma-nifestó su arrepentimiento y admitió que erró al no renun-ciar al caso e informar de esa situación al Tribunal de Apelaciones. Expresó, además, que su tardanza en contes-tar la queja se debió a “razones familiares”.
Así las cosas, el 3 de noviembre de 2010 emitimos una resolución en la que nombramos Comisionada Especial a la Leda. Eliadís Orsini Zayas para que recibiera y evaluara la prueba relacionada a la querella ética y nos sometiera un informe con sus determinaciones y recomendaciones. En aras de cumplir con esa encomienda, la Comisionada cele-bró varias vistas. Entre la prueba presentada figuró el tes-timonio del querellante Ayala Nieves, quién manifestó no tener interés en proseguir con la querella en contra del licenciado Cuevas Borrero.
El 4 de mayo de 2011, la Comisionada Especial rindió su informe ante este Tribunal. En este concluyó que el quere-llado violó el Canon 9, supra, al desatender las órdenes que dictó el Tribunal de Apelaciones. Así también, intimó que a base de las admisiones hechas por el propio querellado aceptando sus repetidos incumplimientos con el foro judicial, este infringió el Canon 12, supra.
Por otro lado, determinó que el licenciado Cuevas Bo-rrero no desobedeció los deberes impuestos por los Cáno-nes 18 y 19, supra. Referente al Canon 18, supra, concluyó que no se estableció si el querellado fue o no contratado para instar el recurso de apelación. En lo atinente al Canon 19, supra, señaló que el querellado le informó al que- *196 reliante el resultado de la apelación a través de su madre. Además, determinó que este no se contradijo en sus con-testaciones a la queja, por lo que no violó en ese contexto el Canon 35, supra.
Considerando estos antecedentes fácticos, procedemos a esbozar los fundamentos que disponen de la querella disciplinaria.
II
A. Deberes de los abogados para con los tribunales
En lo pertinente, el Canon 9, supra, puntualiza que todo abogado “debe observar para con los tribunales una conducta que se caracterice por el mayor respeto”. Según hemos reiterado, “[l]a naturaleza de la abogacía requiere escrupulosa atención y obediencia a las órdenes del Tribunal Supremo, particularmente en la esfera ética”. Id. Véase In re Marrero Luna, 166 D.P.R. 578, 583-584 (2005). La desatención a dichas órdenes constituye un grave insulto a la autoridad de los tribunales, pues constituye una clara violación al mandato expreso de este Canon. In re González Carrasquillo, 164 D.P.R. 813 (2005); In re Grau Díaz, 154 D.P.R. 70 (2001); In re Maldonado Rivera, 147 D.P.R. 380 (1999); In re Otero Fernández, 145 D.P.R. 582 (1998).
Se debe tener presente que la abogacía cumple una función social de notable importancia por su aportación imprescindible a la consecución de la justicia. En ese sentido el abogado, además de ser un defensor de su cliente, es un colaborador de la justicia. In re Hoffman Mouriño, 170 D.P.R. 968, 979-980 (2007). Por lo tanto, la buena marcha del proceso judicial del país es responsabilidad ineludible de todo miembro de la profesión legal. Id. Véase, además, In re Marini Román, 165 D.P.R. 801 (2005).
*197 Igualmente, en relación con nuestras órdenes emitidas durante los procedimientos disciplinarios, hemos expresado que todo abogado tiene la obligación de responder prontamente a nuestros requerimientos, independientemente de los méritos de la queja presentada en su contra. In re Colón Rivera, 170 D.P.R. 440 (2007); In re Negrón Negrón, 163 D.P.R. 586 (2004). La naturaleza pública de la profesión de la abogacía impone al abogado el deber de responder oportunamente a todo requerimiento relacionado con investigaciones disciplinarias. íd. Véanse, además: In re Prieto Rivera, 180 D.P.R. 692 (2011); In re García Incera, 177 D.P.R. 329 (2009). Por consiguiente, se configura una falta independiente a los méritos de la queja presentada cuando un abogado incumple con esta disposición ética. In re Prieto Rivera, supra; In re Otero Encarnación, 179 D.P.R. 827 (2010); In re Rosado Ramos, 172 D.P.R. 400 (2007).
B. Puntualidad y tramitación de las causas
Por su parte, el Canon 12 del Código de Ética Profesional, supra, específicamente impone a los abogados la obligación de ser puntuales en su asistencia, así como ser concisos y exactos en la tramitación de las causas.
Es deber del abogado hacia el tribunal, sus compañeros, las partes y testigos el ser puntual en su asistencia y conciso y exacto en el trámite y presentación de las causas. Ello implica el desplegar todas las diligencias necesarias para asegurar que no se causen indebidas dilaciones en su tramitación y solución.
Obsérvese que el deber antes aludido se extiende a la relación de los abogados con los tribunales. Por ende, la función de un abogado dentro del sistema de justicia le obliga a desempeñarse con la mayor diligencia, responsa-bilidad e integridad. In re Rosado Nieves, 159 D.P.R. 746 (2003).
En relación con la violación de esta norma hemos dis- *198 puesto que las incomparecencias injustificadas del abogado a las vistas señaladas por el tribunal y las actuaciones que pongan en riesgo la acción de su cliente, son violaciones patentes a dicho postulado ético. In re Cuevas Velázquez, 174 D.P.R. 433, 441 (2008).
El abogado debe cumplir con la obligación que se esta-blece en el Canon 12, supra, en todas las etapas de un litigio. In re Collazo I, 159 D.P.R. 141 (2003); In re Pagán Hernández, 141 D.P.R. 113 (1996). Conforme a lo anterior, se ha enfatizado que los abogados deben la más estricta observancia a las órdenes judiciales. De otro modo, pueden quedar sujetos al rigor disciplinario. In re Collazo I, supra, págs. 148-149.
La continua desobediencia a las órdenes del tribunal demuestra una grave infracción a los principios básicos de ética profesional que exigen el mayor respeto hacia los tribunales. In re Collazo I, supra, pág. 149. El comportamiento de todo abogado “ ‘no debe ser otro que el fiel cumplimiento de la ley y el respeto al poder judicial’ ”. In re Díaz Alonso, Jr, 115 D.P.R. 755, 762 (1984). La incomparecencia injustificada a las vistas señaladas por el tribunal que ocasionen la suspensión y, peor aún, la desestimación de la acción judicial, son violaciones patentes al Canon 12, supra. In re López Montalvo, 173 D.P.R. 193 (2008); In re Rosado Nieves, v. supra.
C. Competencia del abogado y consejo al cliente
Por su parte, el Canon 18, supra, establece, en lo pertinente, que:
Será impropio de un abogado asumir una representación profesional cuando está consciente de que no puede rendir una labor idónea competente y que no puede prepararse adecuada-mente sin que ello apareje gastos o demoras irrazonables a su cliente o a la administración de la justicia.
Es deber del abogado defender los intereses del cliente dili-gentemente, desplegando en cada caso su más profundo saber y habilidad y actuando en aquella forma que la profesión jurí- *199 dica en general estima adecuada y responsable.
De acuerdo con esta norma ética, hemos sido enfáticos en señalar que el ejercicio de la práctica de la abogacía requiere, en todo momento, celo, cuidado y prudencia. In re Ríos Pérez, 179 D.P.R. 630 (2010); In re Aponte Berdecía, 162 D.P.R. 743 (2004); In re Rodríguez Torres, 104 D.P.R. 758, 765 (1976); Véanse, además: In re Martínez Ramírez, 142 D.P.R. 329 (1997); In re Siverio Orta, 117 D.P.R. 14, 18 (1986). Una vez se asume la representación legal de un cliente, es un deber ético llevar a cabo aquellas gestiones profesionales pertinentes a favor de sus intereses. En ese sentido se exige que el abogado emplee toda su capacidad, lealtad, responsabilidad, efectividad y la más completa honradez. In re Meléndez La Fontaine, 167 D.P.R. 111 (2006); In re Meléndez Figueroa, 166 D.P.R. 199, 207 (2005). Es necesario tener presente que “[e]l cliente confía que en la tarea de guiar sus causas el abogado desplegará sensibilidad, eficiencia y pericia”. In re Mulero Fernández, 174 D.P.R. 18, 30 (2008). Véase In re León Malavé, 172 D.P.R. 1036, 1043-1044 (2008). En la profesión de la abo-gacía no existe espacio para que los abogados actúen con indiferencia, desidia, despreocupación, inacción y displi-cencia en la tramitación del caso que se le ha encomendado. In re Mulero Fernández, supra; In re Padilla Pérez, 135 D.P.R. 770, 776 (1994); In re Flores Ayffán, 150 D.P.R. 907 (2000).
Conforme a lo anterior, “hemos sostenido, sin ambages, que aquella actuación negligente que pueda conllevar o que, en efecto, conlleve la desestimación o el archivo de un caso o la pérdida del derecho a reclamar judicialmente, se configura violatoria del ... Canon 18”. In re Mulero Fernández, supra, pág. 30. Véanse, además: In re Hoffman Mouriño, supra; In re Guadalupe, Colón, 155 D.P.R. 135, 154-155 (2001). Una vez el abogado acepta representar a un cliente, tiene la responsabilidad de desear- *200 gar su labor con rapidez y eficiencia. In re Ríos Pérez, supra; In re Acosta Grubb, 119 D.P.R. 595 (1987).
D. Información al cliente
Por otro lado, el Canon 19 del Código de Ética Profesional, supra, exige que el abogado mantenga una comunicación efectiva con su cliente. In re Ríos Pérez, supra. Además, establece que una representación legal responsable conlleva que el abogado mantenga informado a su cliente de todo asunto importante que surja en el desarrollo del caso que se le ha encomendado. Esa obligación constituye un elemento imprescindible en la relación fiduciaria que caracteriza el vínculo abogado-cliente. In re García Muñoz, 170 D.P.R. 780 (2007); In re Criado Vázquez, 155 D.P.R. 436, 456 (2001); In re Flores Ayffán, supra. En otras palabras, el abogado debe mantener informado a su cliente de las gestiones realizadas y del desarrollo de los asuntos a su cargo, consultándole cualquier duda sobre asuntos que no caigan en el ámbito discrecional y, dentro de los medios permisibles, cumplir con sus instrucciones. Canon 19, supra; In re Pagán Ayala, 109 D.P.R. 712 (1980); In re Díaz Alonso, Jr, supra; In re Ríos Pérez, supra.
El deber impuesto por este canon está al margen del deber de diligencia, por lo que se configura como una obligación ética independiente. In re Mulero Fernández, supra. Véanse: In re Hernández Pérez I, 169 D.P.R. 91 (2006); In re Cuevas Velázquez, supra. Anteriormente, he-mos pronunciado que la infracción de este canon ocurre cuando se dejan de atender los reclamos de información del cliente, no se le informa del resultado adverso de la gestión encargada, la acción se desestima o se archiva, no se mantiene al cliente al tanto del estado o la situación procesal del caso, o simplemente se niega al cliente información del caso. In re Vélez Valentín, 124 D.P.R. 403 (1989); In re Acevedo Álvarez, 143 D.P.R. 293 (1997). In re Mulero Fernández, supra.
*201 E. Sinceridad, y honradez
En relación con el deber de sinceridad y honra-dez, el Canon 35 del Código de Etica Profesional, supra, dispone que “[l]a conducta de cualquier miembro de la pro-fesión legal ante los tribunales, para con sus representados y en las relaciones con sus compañeros debe ser sincera y honrada”. Véase In re López de Victoria I, 163 D.P.R. 1, 9 (2004).
La falta de veracidad en los hechos es una de las faltas más graves que se puede cometer en el ejercicio de la profesión. In re Vera Vélez, 148 D.P.R. 1 (1999); In re Landing; y Aulet, 107 D.P.R. 103 (1978); In re Cruz Tollinche, 105 D.P.R. 500 (1976). In re Aponte Berdecía, supra. La verdad es un atributo inseparable del ser abogado y, sin esta, la profesión jurídica no podría justificar su existencia. Por ello, el abogado que promueve una prueba falsa ante un tribunal, falta gravemente al deber y a la obligación del citado Canon 35 de actuar con integridad ante los foros judiciales. Esta normativa les impone a los abogados el deber de observar una conducta apropiada, no solo en la tramitación de los pleitos, sino también en toda faceta en que se desempeñen. In re Meléndez Figueroa, supra, pág. 207.
Ill

La apreciación de la prueba por el Comisionado Especial

Por último, la Regla 14 del Reglamento del Tribunal Supremo, 4 L.P.R.A. Ap. XXI-A, dispone que corresponde al Comisionado Especial designado celebrar una vista para recibir la prueba. In re Bonilla Berlingeri, 175 D.P.R. 897 (2009); In re Irizarry Vega, 176 D.P.R. 241, 246-247 (2009). Al desempeñar tal función, el Comisionado Especial está en una posición similar al juzgador de instan-cia, ya que puede aquilatar mejor la prueba testifical. Por *202 esto, sus determinaciones tácticas merecen nuestra mayor deferencia. íd. Véanse, además: In re Ortiz Brunet, 152 D.P.R. 542, 548 (2000); In re Morales Soto, 134 D.P.R. 1012, 1016 (1994).
Ahora bien, este Foro no está obligado a aceptar el informe de un Comisionado Especial nombrado para atender una querella contra un abogado si puede adoptar, modificar o rechazar tal informe. In re Torres Viñals, 180 D.P.R. 236, 248 (2010); In re Ríos Rivera, 147 D.P.R. 140, 142-143 (1998). Sin embargo, de ordinario sostendremos las determinaciones de hecho de un Comisionado Especial, salvo que se demuestre prejuicio, parcialidad o error manifiesto. In re Torres Viñals, supra; In re Morell, Alcover, 158 D.P.R. 791 (2003); In re Soto López, 135 D.P.R. 642, 646 (1994); In re Arroyo Fernández, 133 D.P.R. 364 (1993); In re Rivera Arvelo y Ortiz Velázquez, 132 D.P.R. 840 (1993).
En cuanto a la prueba documental, este Tribunal está en igual posición que el Comisionado Especial. Por lo tanto, la doctrina sobre la deferencia a las determinaciones del Comisionado Especial no aplica cuando la prueba con-siste de deposiciones, estipulaciones o hechos incontrover-tidos por las alegaciones o la prueba. In re Ortiz Brunet, supra.
IV
Debemos también determinar si el querellado faltó a sus deberes de diligencia hacia su cliente y hacia los tribunales. El querellante Ayala Nieves alegó mediante su queja que el licenciado Cuevas Borrero no perfeccionó su apelación, por lo cual fue desestimada en el foro apelativo intermedio. El querellado aceptó esta imputación ética. Igualmente, el letrado admitió que incumplió con las órde-nes emitidas por este Tribunal durante el proceso discipli-nario en su contra.
*203 Luego de examinar con rigor el expediente de autos, aceptamos el informe de la Comisionada Especial y colegi-mos que las actuaciones del querellado infringieron los ci-tados Cánones 9 y 12, supra. Además, creemos que el le-trado también se apartó de la normativa contenida en los Cánones 18 y 19, supra. El historial procesal ante el Tribunal de Apelaciones, así como las propias admisiones del querellado, demuestran que este fue negligente en atender las órdenes y los requerimientos que solicitó ese foro.([1]) *204 Esta negligencia en la tramitación del caso y el incumpli-miento con las órdenes del Tribunal constituyen un patrón de conducta sumamente irresponsable del querellado hacia sus deberes éticos con los tribunales. Véanse: In re Rosado Nieves, supra; In re Grau Díaz, supra.
Por otro lado, el querellado adujo, como defensa, que no perfeccionó el recurso de apelación porque el querellante Ayala Nieves no lo contrató para ello y que, incluso, este no deseaba apelar su caso. Es sabido que ningún abogado está obligado a representar a determinado cliente y es su dere-cho aceptar o rechazar ofrecer sus servicios de representa-ción profesional. Empero, durante la aceptación de un caso, el abogado debe ser claro y preciso en cuanto a si acepta o no representarlo, y así hacérselo saber al cliente sin lugar a equívocos. Asimismo, el abogado no se puede amparar en la ausencia de un contrato escrito para excu-sar su responsabilidad, si por sus actos induce al cliente a creer que ha aceptado su representación. In re Agostini de Torres, 103 D.P.R. 910 (1975). Así, pues, colegimos que el letrado con sus actuaciones indujo a su cliente a pensar que procedía la presentación del recurso de apelación. En atención a ello, una vez el licenciado Cuevas Borrero deci-dió voluntariamente presentar ese recurso, debió hacerlo con corrección y eficacia. Por ende, la defensa que presentó el querellado para liberarse de la responsabilidad im-puesta por el Canon 18, supra, es improcedente ante las circunstancias de este caso.
Además, le correspondía al querellado notificarle ade-cuadamente a su cliente el resultado de su apelación. Como es sabido, las obligaciones éticas del abogado son indelegables. Este no puede asumir que un tercero en la *205 relación abogado-cliente será el responsable de notificarle a su cliente los asuntos importantes que surjan en el desa-rrollo del caso. Por ello, es impropio que el querellado no le haya notificado directamente al querellante los sucesos im-portantes en relación con su caso en la etapa apelativa. La mera notificación a la madre de su cliente resulta insufi-ciente para cumplir con los deberes impuestos por el Canon 19, supra.
De otra parte, estamos contestes con el informe de la Comisionada Especial porque no se demostró que el le-trado faltó a sus deberes de honradez y sinceridad estable-cidos por el Canon 35, supra. No surgen de sus contesta-ciones a la queja que este haya entrado en contradicciones sustanciales que demuestren algún grado de mendacidad o deshonestidad en sus declaraciones.
Por último, de forma reiterada hemos afirmado que al determinar la sanción disciplinaria aplicable a un abogado, es necesario considerar la reputación en su comunidad, el historial previo, si es su primera falta, la aceptación de la falta y su sincero arrepentimiento, si se trata de una conducta aislada, el ánimo de lucro que medió en su actuación, resarcimiento al cliente y cualesquiera otras circunstancias que sean atenuantes o agravantes que medien de acuerdo los hechos. In re Guadalupe, Colón, supra; In re Vélez Barlucea, 152 D.P.R. 298 (2000); In re Díaz Ortiz, 150 D.P.R. 418, 427 (2000).
En el caso de autos, tomamos como atenuantes a favor del licenciado Cuevas Borrero lo siguiente: (1) que sus ac-tuaciones constituyen su primera falta en el ejercicio de la profesión; (2) el querellado aceptó su falta de diligencia hacia los tribunales en la tramitación del recurso apelativo y en los procedimientos disciplinarios instados en su contra, y (3) expresó sentirse arrepentido por sus actuaciones.
*206 V
Por las razones que anteceden, ordenamos la suspensión inmediata del Ledo. Ismael Cuevas Borrero del ejercicio de la abogacía y la notaría por dos meses. Su admisión de los hechos y de las consecuencias lesivas de sus actuaciones a la ordenada e imparcial administración de la justicia, así como su previo historial en la práctica de la profesión, han pesado en nuestro ánimo para limitarnos a una suspensión por el término de dos meses. El querellado tiene el deber de notificar a todos sus clientes su inhabilidad para continuar con su representación y les deberá devolver los expedientes de los casos pendientes, así como los honorarios recibidos por trabajos no rendidos. Además, tiene el deber de infor-mar oportunamente de su suspensión a los foros judiciales y administrativos. Estas gestiones se deberán certificar a este Tribunal dentro de treinta días a partir de la notifica-ción de esta Opinión y Sentencia.

Finalmente, el Alguacil de este Tribunal deberá incautar la obra y el sello notarial del señor Cuevas Borrero y entre-garlos a la Directora de la Oficina de Inspección de Nota-rías para la correspondiente investigación e informe.

Se dictará sentencia de conformidad.

(1) El tracto procesal ante el Tribunal de Apelaciones, según se deduce del In-forme de la Comisionada Especial, demuestra la negligencia del licenciado Cuevas Borrero en la tramitación del recurso de apelación. Específicamente, el informe de-terminó los siguientes hechos:
• El 14 de noviembre de 2001, y notificado el 26 de noviembre de ese mismo año, el Tribunal Apelativo le ordenó al TPI que permitiera regrabar los procedimientos efectuados ante sí.
• Surge de la sentencia emitida por el foro apelativo que, ya que no se había cumplido con la presentación de la exposición narrativa de la prueba ordenada desde el 17 de octubre de 2001, el 12 de marzo de 2002, el Tribunal Apelativo emitió una resolución para que en el término de cinco días se informara en qué etapa se encon-traba su preparación.
• El apelante Santos Ayala Nieves, a través de su representación legal —el Lie. Ismael Cuevas Borrero— no cumplió con dicha orden, por lo que el 22 de mayo de 2002, el tribunal le concedió cinco días más al apelante para que presentara la ex-posición narrativa de la prueba, conforme se le ordenó desde el 17 de octubre de 2001.
• El 3 de julio de 2002, el apelante compareció a través de su representación —el licenciado Cuevas Borrero— mediante un escrito denominado Moción Informativa Urgente y Solicitud de Remedios, para informar al Tribunal que había acudido en varias ocasiones al TPI y que, luego de que inicialmente le indicaran que había recibido la orden de regrabación, ahora le indicaban que solamente tenían copia del escrito de apelación. Solicitó que se emitiera otra orden a los mismos efectos. Dicha Moción fue presentada treinta y cinco días después de vencido el término de cinco días concedido.
• El 5 de septiembre de 2002, dos meses más tarde, el apelante, a través de su representación legal, el licenciado Cuevas Borrero, presentó ante el TPI la Moción para solicitar la regrabación de los procedimientos.
• Mediante Resolución de 17 de septiembre de 2002, el tribunal apelativo con-cedió diez días para que presentara el proyecto de exposición narrativa de la prueba. En dicha Resolución se advirtió que un nuevo incumplimiento con las órdenes resul-taría en la desestimación del recurso.
• El 2 de octubre de 2002, el Tribunal de Apelaciones ordenó al apelante que en el término de veinte días acreditara los trámites que había realizado para obtener la regrabación de los procedimientos.
• El 6 de noviembre de 2002, mediante resolución, el foro apelativo le notificó al apelante que como no cumplió nuevamente con una orden, se le imponía como san-ción, al apelante, el pago de cien dólares en sellos de rentas internas a ser pagados en la Secretaría de ese Tribunal Apelativo. Además, se apercibió de mayores sanciones de continuar los incumplimientos. No sabemos si las sanciones fueron satisfechas o *204 si el foro apelativo tomó medidas para cobrarlas. Recordemos que el apelante estaba confinado.
• El foro apelativo establece en su Sentencia de 10 de junio de 2003 que, trans-curridos más de seis meses desde la última resolución, el apelante no ha cumplido con las órdenes emitidas, por lo que se desestimó el recurso de apelación.