EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| In re: | |
| | 2023 TSPR 20 |
| Edwin H. Sepúlveda Valentín (TS-6,638) | 211 DPR ___ |

Número del Caso: CP-2018-0007

Fecha: 28 de febrero de 2023

Oficina del Procurador General:

    Lcdo. Joseph G. Feldstein del Valle
    Subprocurador General

    Lcda. María C. Ortiz Toral
    Procuradora General Auxiliar

    Lcda. Yaizamarie Lugo Fontanéz
    Procuradora General Auxiliar

    Lcda. Gisela Rivera Matos
    Procuradora General Auxiliar

Abogado del Querellado.

    Lcdo. Néstor M. Rodríguez González

Comisionada Especial

    Hon. Isabel Llompart Zeno

Materia: Conducta Profesional – Suspensión inmediata e indefinida del ejercicio de la abogacía por infringir los Cánones 19, 23, 35 y 38 del Código de Ética Profesional.

Este documento está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal Supremo. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| *In re*:<br><br>Edwin H. Sepúlveda Valentín<br>(TS-6,638) | CP-2018-0007 | *Conducta Profesional* |

**PER CURIAM**

En San Juan, Puerto Rico, a 28 de febrero de 2023.

En esta ocasión, nuevamente, nos vemos obligados a ejercer nuestra facultad disciplinaria sobre un miembro de la abogacía por incumplir con los postulados éticos que, como mínimo, deben guiar la gestión de todo miembro de la profesión legal. En el día de hoy, intervenimos disciplinariamente con el Lcdo. Edwin H. Sepúlveda Valentín por infringir los Cánones 19, 23, 35 y 38 del Código de Ética Profesional, 4 LPRA Ap. IX.

Adelantamos, que procede decretar la suspensión inmediata e indefinida del letrado de la práctica de la abogacía.

Veamos las circunstancias fácticas que sustentan nuestra determinación.

**I**

El Lcdo. Edwin H. Sepúlveda Valentín (licenciado Sepúlveda Valentín o promovido) fue admitido al ejercicio

de la abogacía el 7 de noviembre de 1979 y prestó juramento como notario el 27 de noviembre de 1979.

Entre el año 2016 y 2017, el Sr. José L. Quiñones Villanueva (promovente) presentó varios escritos ante este Tribunal en donde le imputó al licenciado Sepúlveda Valentín haber infringido múltiples Cánones de Ética. En síntesis, relató que contrató al letrado para que lo representara en un caso civil (sobre daños y perjuicios) y que le instruyó terminar el caso por medio de una transacción, pero que este no lo hizo cuando lo solicitó. Además, señaló que, durante el año 2012, fue acusado en un caso criminal y el licenciado Sepúlveda Valentín nuevamente fungió como su representante legal. Mientras este segundo asunto seguía su curso, el promovente alegó que recibió una moción de un bufete legal en la cual se le informaba que el caso sobre daños y perjuicios que tenía pendiente había culminado toda vez que **se había alcanzado un acuerdo transaccional. Arguyó que este acuerdo se realizó sin su consentimiento.**[1] Asimismo, expresó que, del documento recibido, surgía que la Lcda. María Eugenia Rosas Salgado **le entregó un cheque al licenciado Sepúlveda Valentín por la cantidad de tres mil ($3,000.00) dólares como pago por el acuerdo, que este lo**

---

[1] Mencionó que de la comunicación que recibió, se desprendía que el Tribunal de Primera Instancia había emitido una Sentencia en el 2012 de la cual no tenía conocimiento. Además, señaló que se enteró cuatro (4) años más tarde cuando recibió la moción del Bufete Díaz Rosas.

**retuvo y no le informó en ningún momento haber recibido dicho pago.**

Examinadas las alegaciones, procedimos a remitir el asunto a la Oficina del Procurador General de Puerto Rico para que realizara la correspondiente investigación y sometiera un informe sobre los hallazgos de su investigación. Consecuentemente, el Procurador General presentó su informe, en el que concluyó que el licenciado Sepúlveda Valentín incurrió en posibles violaciones a los Cánones 19, 23, 35 y 38 del Código de Ética, supra. Lo anterior, debido a que el letrado retuvo el pago en cheque que se obtuvo por el acuerdo de transacción que realizó en la acción de daños, no lo entregó al promovente para que lo endosara y que, además, cambió el mismo con una firma falsificada.

Luego de los trámites de rigor, que incluyeron la presentación de la querella correspondiente por parte de la Oficina del Procurador General,[2] así como la

---

[2] La Querella del Procurador General le imputó al licenciado Sepúlveda Valentín los siguientes cuatro (4) cargos:

**Primer cargo:** se infringió los preceptos del Canon 23 al no darle pronta cuenta al promovente del dinero que recibió en pago en virtud de la transacción del caso A DP2OIO-0136, toda vez que no le entregó ni le llevó el cheque al señor Quiñones Villanueva, su cliente. El licenciado Sepúlveda Valentín cambió el mismo sin tomarle la firma al promovente a pesar de que se dirigió a la orden del señor Quiñones y de éste, reteniendo para sí la suma de $3,000.00.

**Segundo cargo:** se infringió el Canon 35 al no ser sincero y honrado. Toda vez que en la contestación a la queja indicó que el señor Quiñones lo autorizó a que retuviera el cheque de $3,000.00 en pago de la transacción del caso civil A DP2010-0136 en concepto de honorarios del caso criminal en

contestación del licenciado Sepúlveda Valentín, nombramos

a la Hon. Isabel Llompart Zeno, ex Jueza del Tribunal de

Primera Instancia, para que, en calidad de Comisionada

Especial, recibiera la prueba y nos rindiera un informe

con las determinaciones de hechos y las recomendaciones

que estimara pertinentes.

Posteriormente, tras la celebración del proceso de

vistas en su fondo presidido por la Comisionada Especial,

esta nos rindió un amplio y detallado informe con sus

determinaciones y conclusiones sobre el caso. Cabe

---

el que también lo representó. Ello sin atender el reclamo del señor Quiñones en torno a que no realizó el endoso que aparece en el cheque. No es hasta que se le realizó un requerimiento fechado de 17 de marzo de 2017, que explicó el licenciado Sepúlveda Valentín que firmó el cheque y lo cambió en un comercio y que el señor Quiñones lo autorizó a ello. No obstante, indicó que solo puso su firma, y que la del señor Quiñones la vio por vez primera cuando la parte demandada le notificó el cheque e indicó, además: "si alguien lo firmó fue luego de yo entregarlo?'. Sin embargo, acorde con la investigación y prueba recopilada sobre este asunto el señor Quiñones nunca autorizó al licenciado Sepúlveda Valentín a que retuviera los $3,000.00 como pago de los servicios rendidos en un caso criminal. Además, la parte demandada le entregó el cheque sin endosar y la firma del licenciado Sepúlveda Valentín aparece debajo del endoso realizado a nombre del señor José L. Quiñones Villanueva. La prueba recopilada demuestra una falta de sinceridad de parte del letrado en este asunto.

**Tercer cargo**: infringió el Canon 19, que le impone el deber de informar al cliente todo asunto importante. Esto, debido a que el licenciado Sepúlveda Valentín no informó a su cliente del recibo del cheque de la transacción, así como tampoco solicitó de su cliente que este lo endosara.

**Cuarto cargo**: infringió los preceptos del Canon 38 que le impone el deber de exaltar el honor y la dignidad de la profesión a la que pertenece y de evitar incurrir en conducta impropia y/o la apariencia de conducta impropia. La totalidad de los hechos a los que se refiere la Querella de autos es "clara evidencia de que el letrado no dio cumplimiento con los preceptos de conducta mínima que se le exige bajo el Canon 38 de Ética Profesional".

mencionar que la Comisionada Especial coincidió con las determinaciones y conclusiones del Procurador General.

En particular, y en lo referente a los primeros tres cargos, la Comisionada Especial concluyó que el Procurador General probó que el licenciado Sepúlveda Valentín incurrió en la conducta prohibida por los Cánones 19, 23 y 35 de Ética Profesional, *supra*, toda vez que la evidencia presentada **demostró que el letrado no le rindió cuenta a su representado del dinero que recibió por concepto de un acuerdo de transacción; que retuvo la totalidad del dinero; permitió que otra persona firmara y endosara a nombre de su cliente.** De hecho, los hechos estipulados por las partes reflejan que el licenciado Sepúlveda Valentín cambió el cheque núm. 598931 en un negocio **sin haberle tomado la firma al señor Quiñones Villanueva.**

De igual forma, la Comisionada Especial concluyó que el letrado también omitió informarle a su cliente asuntos importantes tales como el estatus del caso, la negociación en el caso de daños, la transacción realizada, la Sentencia dictada, así como tampoco le entregó ningún documento, en particular la Sentencia, cuya notificación ha de ser **inmediata**.

En lo que respecta al cuarto y último cargo, la Comisionada Especial concluyó que el licenciado Sepúlveda Valentín no exaltó el honor y la dignidad de la profesión, tal como reza el Canon 38 de Ética Profesional, *supra*,

pues como mencionó anteriormente, el abogado retuvo el dinero de su cliente y tal conducta quebranta las disposiciones del mencionado Canon.

## II

Como parte de nuestra facultad inherente de regular la profesión jurídica en Puerto Rico nos corresponde asegurar que los miembros admitidos a la práctica de la abogacía y la notaría ejerzan sus funciones de manera responsable, competente y diligente.[3] Es de todos conocido que el Código de Ética Profesional establece las normas de conducta éticas que, como mínimo, debe cumplir todo miembro de la clase togada.[4] Como corolario de lo anterior, es deber de cada abogado desempeñar el ministerio con la mayor y más excelsa competencia, responsabilidad e integridad.[5]

### A. Canon 19 de Ética Profesional

El Canon 19 del Código de Ética Profesional, *supra*, dispone, en lo pertinente, que "[e]l abogado debe mantener a su cliente siempre informado de todo asunto importante que surja en el desarrollo del caso que le ha sido encomendado". Ello "constituye un elemento

---

[3] *In re Marín Serrano*, 197 DPR 535, 538 (2017); *In re Montalvo Delgado*, 196 DPR 542, 556 (2016); *In re Sepúlveda Torres*, 196 DPR 50, 53 (2016).

[4] *In re Marín Serrano*, *supra*; *In re Sepúlveda Torres*, *supra*. Véase, además: *In re Guemárez Santiago*, 191 DPR 611, 617-618 (2014); *In re Falcón López*, 189 DPR 689, 695 (2013).

[5] *In re Lajara Radinson*, 207 DPR 854, 862 (2021); *In re Irisarri Castro*, 172 DPR 193, 209-210 (2007).

imprescindible en la relación fiduciaria que caracteriza el vínculo abogado-cliente".[6] Así pues, este impone a la clase togada la obligación de informar a sus clientes sobre las gestiones realizadas y el desarrollo de las encomiendas para las que fueron contratados.

La información que un abogado debe suministrar a su cliente es aquella que este debe tener por su condición de dueño del caso.[7] Así, un abogado infringe el Canon 19 cuando no atiende los reclamos de información de su cliente, no le informa de un resultado adverso en la gestión encomendada, no mantiene informado al cliente con relación al estado o la situación procesal del caso o, simplemente, cuando le niega información de su caso.[8]

Sobre las transacciones de los casos, este canon dispone que siempre que la controversia sea susceptible de un arreglo o transacción razonable, el abogado debe aconsejar al cliente que evite o termine el litigio. El abogado debe notificar a su cliente de cualquier oferta de transacción hecha por la otra parte. Este deber de los abogados se configura como una obligación ética independiente.[9]

---

[6] *In re Sánchez Reyes*, 204 DPR 548, 571 (2020); *In re Collado Ruiz*, 195 DPR 705, 713 (2016); *In re Santos Cruz*, 193 DPR 224, 229 (2015).

[7] *In re García Ortiz*, 187 DPR 507, 519 (2013).

[8] *In re Reyes Coreano*, 190 DPR 739, 752-753 (2014).

[9] Véase, *In re Hernández Pérez*, 169 DPR 91 (2006).

**B. Canon 23 de Ética Profesional**

Por su parte, el Canon 23 del Código de Ética Profesional, *supra*, preceptúa que la naturaleza fiduciaria de la relación abogado-cliente debe estar fundada en una absoluta honradez.[10] Asimismo, dispone que todo abogado "**debe dar pronta cuenta del dinero u otros bienes del cliente que vengan a su posesión y no debe mezclarlos con sus propios bienes ni permitir que se mezclen**".[11] En lo que a esta obligación respecta, hemos recalcado que "los abogados deben velar por que la relación abogado-cliente sea transparente".[12]

Por ello, un abogado que retiene fondos de sus clientes incurre en una práctica altamente lesiva a la profesión legal y menoscaba la relación de honradez y confianza que debe existir entre él y su cliente.[13] En consecuencia, hemos resuelto que infringe el Canon 23 un abogado que retiene cualquier cantidad de dinero perteneciente a su cliente.[14] Esto, "independientemente de que haya devuelto el dinero retenido o no haya tenido la intención de apropiárselos permanentemente".[15] Incluso, la

---

[10] 4 LPRA Ap. IX.

[11] Íb.

[12] *In re Álvarez Aponte*, 158 DPR 140, 146 (2002).

[13] *In re Rivera Rodríguez*, 202 DPR 1026, 1050 (2019).

[14] *In re Rivera Contreras*, 202 DPR 73, 89 (2019); *In re Peña Ríos*, 202 DPR 5, 17 (2019); *In re González Rodríguez*, 201 DPR 174, 212 (2018).

[15] *In re Rivera Rodríguez,* supra; *In re Martí Rodríguez*, 194 DPR 467, 474 (2016).

dilación en la devolución de esos fondos es causa suficiente para infringir el Canon 23, *supra*. [16]

### C. Canon 35 de Ética Profesional

Por otro lado, el Canon 35 del Código de Ética Profesional, *supra*, establece, en lo pertinente, que la conducta de cualquier miembro de la profesión legal ante los tribunales, para con sus representados y en las relaciones con sus compañeros, debe ser sincera y honrada. Este precepto impone a todo abogado la obligación de regirse por unas normas mínimas de conducta, indispensables para promover el honor y la dignidad de la profesión.[17]

Sobre este particular, hemos señalado que se transgrede el Canon 35 de Ética Profesional, *supra*, cuando se falta objetivamente a los valores de sinceridad y honradez, pilares fundamentales de la profesión legal.[18] De hecho, es innecesaria la intención de defraudar o engañar para que se entienda violado el postulado ético.[19] En ese sentido, no se considerarán defensas el no haber actuado de mala fe, deliberadamente, sin

---

[16] *In re González Díaz*, 201 DPR 145, 152 (2018); *In re Colón Hernández*, 189 DPR 275, 284 (2013).
[17] *In re Maldonado De Jesús*, 2022 TSPR 6, 208 DPR ____ (2022); *In re Charbonier Laureano*, 204 DPR 351, 364 (2020); *In re López de Victoria I*, 163 DPR 1, 8 (2004).
[18] *In re Joglar Castillo*, 2022 TSPR 144 (2022), *In re Maldonado De Jesús*, supra; *In re Charbonier Laureano*, supra.
[19] Íb.

intención de engañar o defraudar ni la ausencia de daño o perjuicio a terceras personas.[20]

Recuérdese que el ejercicio de la profesión legal se fundamenta en la búsqueda de la verdad.[21] Por ello, la trascendencia de este precepto ético consiste en que la verdad es un atributo inseparable de los abogados y las abogadas y, sin ella, la profesión jurídica no podría justificar su existencia.[22]

### D. Canon 38 de Ética Profesional

Por último, el Canon 38 del Código de Ética Profesional, *supra*, establece que "el abogado deberá esforzarse, al máximo de su capacidad, en la exaltación del honor y dignidad de su profesión, aunque al así hacerlo conlleve sacrificios personales y debe evitar hasta la apariencia de conducta profesional impropia". Entre otras cosas, el precitado canon instituye el deber de todo abogado y toda abogada de exaltar el honor y la dignidad de la profesión legal, aunque el así hacerlo conlleve sacrificios personales, y debe evitar hasta la apariencia de conducta profesional impropia.[23]

Es por ello que hemos señalado que "por ser los abogados el espejo donde se refleja la imagen de la profesión, éstos deben actuar con el más escrupuloso

---

[20] Íb.

[21] *In re Joglar Castillo*, supra; *In re Sierra Arce*, 192 DPR 140, 147 (2014).

[22] Íb. Véase, además, *In re Ramos Sáenz*, 205 DPR 1089, 1101 (2020).

[23] 4 LPRA Ap. IX, C. 38.

sentido de responsabilidad que impone la función social que ejercen".[24] De hecho, la clase togada tiene el deber de evitar que sus actuaciones den margen a la más leve sospecha de impropiedad y tienen la responsabilidad moral y ética de examinar su comportamiento continuamente.[25]

Por último, cuando se impone una sanción disciplinaria a un abogado, debemos considerar su historial, si goza de buena reputación, si ha aceptado su falta y muestra sincero arrepentimiento, si medió ánimo de lucro y cualquier otro factor pertinente a los hechos.[26]

### E. Informe Comisionado Especial

De ordinario, las determinaciones de hecho que realice el Comisionado o la Comisionada Especial gozarán de deferencia y serán sostenidas por esta Curia, salvo que medie prejuicio, parcialidad o error manifiesto.[27] Esta norma "aplica, principalmente, cuando el Comisionado [o la Comisionada] Especial tiene la oportunidad de escuchar a los testigos, porque se encuentra en mejor posición para aquilatar dicha prueba".[28]

Después de todo, estos funcionarios son las personas a quienes este Tribunal le delega la encomienda de celebrar la vista, investigar, recibir y evaluar la

---

[24] *In re Guemárez Santiago*, *supra*, pág. 620.

[25] *In re Lajara* Radinson, supra; *In re Ramos Sáenz*, supra; In *re Pagani Padró*, 198 DPR 812, 824 (2017).

[26] *In re Martí Rodríguez,* supra, pág. 475; *In re Pietri Castellón*, supra, pág. 995.

[27] *In re Meléndez Mulero*, 2022 TSPR 3, 208 DPR ____ (2022); *In re Colón Ortiz*, *supra*, págs. 460-461; *In re Franco Rivera*, 203 DPR 770, 779 (2019).

[28] *In re Joglar Castillo*, supra.

prueba, así como preparar el informe de rigor de modo que, en esencia, se encuentran en una posición similar a la que ocupan los jueces y juezas en los foros judiciales primarios.[29]

Por último, estimamos necesario resaltar que, al fijar una sanción disciplinaria por violaciones a los cánones del Código de Ética Profesional, *supra*, este Tribunal debe considerar los siguientes factores: 1) la reputación del abogado o de la abogada en la comunidad; 2) su historial disciplinario previo; 3) si se trata de su primera infracción; 4) si ninguna parte ha resultado perjudicada; 5) la aceptación de la falta y su sincero arrepentimiento; 6) si se trata de una conducta aislada; 7) si medió ánimo de lucro en su actuación; 8) el resarcimiento al cliente, y 9) cualquier otra consideración, ya sea atenuante o agravante, que surja de los hechos.[30]

En consideración a preceptos jurídicos antes esbozados, procedemos a disponer del proceso disciplinario que nos ocupa.

### III

En múltiples ocasiones hemos expresado que el objetivo del Código de Ética Profesional es propiciar que los abogados se desempeñen acorde a los más altos

---

[29] *In re Joglar Castillo*, supra; *In re Soto Aguilú*, 202 DPR 137, 145-146 (2019); *In re Peña Ríos*, *supra*, pág. 20.
[30] *In re Joglar Castillo*, supra; *In re Vélez Torres*, 2022 TSPR 79, 209 DPR ____ (2022).

principios de conducta para beneficio de la profesión, la ciudadanía y las instituciones de justicia del país. En este contexto, evaluamos la conducta del querellado junto con los preceptos antes enunciados y estamos de acuerdo con la apreciación que hizo la Comisionada Especial en su informe final.

De la prueba surge que el licenciado Sepúlveda Valentín, quien representó al señor Quiñones Villanueva en el pleito civil ADP2010-0136 contra la Administración de Corrección, recibió un pago en cheque por concepto de un acuerdo transaccional al cual se arribó en la mencionada causa, **y nunca se lo informó a su cliente**. Además, se demostró que la orden de pago estaba dirigida tanto al licenciado Sepúlveda Valentín como a su cliente Quiñones Villanueva. Sin embargo, tal como **aceptó** el letrado, **este procedió a cambiar el cheque** en el establecimiento comercial Almacén Sosa Ramírez, **sin la firma o endoso de su cliente**, solo con la suya. De hecho, surge del dorso del cheque núm. 598931 la firma del licenciado Sepúlveda Valentín debajo del nombre en cursivo del señor Quiñones Villanueva. El letrado aceptó que no acudió al centro penitenciario donde se encontraba el promovente recluido para tomar su firma, por lo que con esta desmesurada acción, permitió que otra persona firmara y endosara un cheque que iba dirigido a su cliente, quien era el dueño de la causa de acción y por

consiguiente, del dinero que recibiera de ella.[31] También, surgió que luego de cambiar el cheque, el querellado no depositó dinero en comisaría ni entregó suma alguna al señor Quiñones Villanueva.

Como hemos expresado en infinidad de ocasiones, un abogado que retiene fondos de sus clientes incurre en una práctica altamente lesiva a la profesión legal y menoscaba la relación de honradez y confianza que debe existir entre él y su cliente.[32]

Sin duda alguna, con las actuaciones aquí descritas, el promovido menoscabó la relación de honradez y confianza adeudada para con sus clientes, por lo que contravino con lo exigido tanto en el Canon 23, *supra*, como en el 35, *supra*.

Por otra parte, y en cuanto al deber de mantener informados a sus clientes, el letrado falló en repetidas ocasiones en comunicarle ciertos acontecimientos del caso a su cliente. Además de no informarle que recibió un cheque como motivo de una transacción a su cliente, el querellado tampoco informó a su cliente de asuntos importantes tales como el estatus del caso, la transacción realizada y mucho menos, la Sentencia dictada que finiquitaba el caso, *cuya notificación ha de ser inmediata*, y es, posiblemente, el evento más importante de todo el procedimiento judicial. Sobre este particular,

---

[31] Véase, *In re Ríos Ríos,* 175 DPR 57 (2008).
[32] *In re Rivera Rodríguez*, 202 DPR 1026, 1050 (2019).

el querellado admitió que le envió la sentencia al cliente el 7 de febrero de 2014 aun cuando esta fue dictada el 9 de octubre de 2012. Es decir, que la envió **dieciséis meses luego** de ser decretada. Esta comunicación fue devuelta y el promovente nunca se enteró ⸺*por parte de su representante legal*⸺ del desenlace de su caso.

Ante la ausencia de actos o gestiones afirmativas por parte del licenciado Sepúlveda Valentín en mantener informado al señor Quiñones Villanueva sobre importantes acontecimientos en su causa civil, es forzoso concluir que el letrado infringió el Canon 19 del Código de Ética Profesional.

Ciertamente, las actuaciones del licenciado Sepúlveda Valentín, además de lacerar la confianza y honradez para con su cliente, mancilló la excelsa imagen bajo la cual debe conducirse y desempeñarse en sus funciones todo miembro de la clase togada e incumple crasamente con lo dispuesto en el Canon 38 del Código de Ética Profesional, *supra*.

A la luz de los hechos y el derecho aplicable, concluimos que las actuaciones del licenciado Sepúlveda Valentín fueron contrarias a los Cánones 19, 23, 35 y 38 del Código de Ética Profesional, *supra*.

**IV.**

Luego de reconocer el incumplimiento del abogado, queda por determinar la correspondiente sanción

disciplinaria. Para ello, como mencionamos anteriormente, es importante ponderar los factores siguientes: 1) la reputación del abogado en su comunidad; 2) su historial; 3) si es su primera falta; 4) si ninguna parte resultó perjudicada con su proceder; 5) la aceptación de la falta y su arrepentimiento; 6) si es un comportamiento aislado; y 7) cualquier otra consideración, ya sea atenuante o agravante, que surja de los hechos particulares del caso.[33]

En cuanto a la reputación del abogado en la comunidad, la Comisionada Especial consignó que se presentaron varias declaraciones juradas junto con la declaración de un testigo a los fines de realzar la buena reputación de la cual gozaba el letrado.

Ahora bien, sobre su historial previo, se destacó que el licenciado Sepúlveda Valentín fue **suspendido del ejercicio de la profesión por dos meses** en el caso *In re Sepúlveda Valentín y Casiano Santiago,* 155 DPR 193 (2001). Posterior a su suspensión, **y aún cuando se encontraba suspendido, el licenciado Sepúlveda Valentín llevó a cabo unas gestiones como abogado a favor de una persona que fue su cliente**. Es decir, el letrado pretendió ejercer la práctica de la abogacía cuando no estaba autorizado para ello, un hecho reprochable y por

---

[33] *In re Irizarry Rodríguez*, 193 DPR 633, 668 (2015).

el cual se le suspendió por un término de dos (2) años.[34] Eventualmente fue reinstalado.

Por otro lado, y en referencia a los próximos factores a considerar, estamos conscientes, tal como lo señaló la Comisionada Especial, que: i) este caso no es la primera falta del querellado; ii) que el promovente sí resultó perjudicado, principalmente, al no recibir el dinero que le correspondía como compensación de la transacción; iii) el querellado nunca aceptó las faltas y trató de justificar el resultado; iv) no trata de una conducta aislada; y v) no le resarció al cliente ninguna cantidad de dinero.

Por otra parte, el licenciado Sepúlveda Valentín, aunque fuera del término reglamentario para ello, replicó el informe de la Comisionada Especial. A pesar de que trató de justificar sus acciones, aceptó que cometió un error al no haber acudido a la institución carcelaria donde se encontraba el promovente para obtener su firma antes de cambiar el cheque y por "cualquier otro acto incorrecto o antiético que pudiere haber realizado en este caso".

## V.

Evaluado y ponderado el Derecho aplicable, así como las infracciones éticas incurridas por el licenciado

---

[34] *In re Sepúlveda Valentín*, 162 DPR 785 (2004). A pesar de que la suspensión decretada fue de dos (2) años, acreditamos el tiempo que había permanecido suspendido entre el procedimiento anterior y las investigaciones de la querella que dio paso a su eventual suspensión.

Sepúlveda Valentín, decretamos su suspensión inmediata e indefinida del ejercicio de la abogacía.

Le ordenamos notificar a todos sus clientes de su inhabilidad para continuar con su representación y a devolverles tanto los expedientes de los casos pendientes como los honorarios recibidos por trabajos no rendidos. Además, deberá informar inmediatamente de su suspensión a los distintos foros judiciales y administrativos en los que tenga algún asunto pendiente y acreditar ante este Tribunal el cumplimiento con lo anterior, incluyendo una lista de los clientes a quienes le notificó de su suspensión, dentro del término de treinta (30) días, a partir de la notificación de esta Opinión *Per Curiam* y Sentencia. No hacerlo pudiera conllevar que no se le reinstale al ejercicio de la abogacía de solicitarlo en el futuro.

Se dictará Sentencia de Conformidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| In re:<br><br>Edwin H. Sepúlveda Valentín<br>(TS-6,638) | CP-2018-0007 | *Conducta Profesional* |

**SENTENCIA**

En San Juan, Puerto Rico, a 28 de febrero 2023.

Por los fundamentos expuestos en la Opinión *Per Curiam* que antecede, la cual se hace formar parte de la presente Sentencia, decretamos la suspensión indefinida e inmediata del ejercicio de la abogacía del Lcdo. Edwin H. Sepúlveda Valentín.

Le ordenamos notificar a todos sus clientes de su inhabilidad para continuar con su representación y a devolverles tanto los expedientes de los casos pendientes como los honorarios recibidos por trabajos no rendidos. Además, deberá informar inmediatamente de su suspensión a los distintos foros judiciales y administrativos en los que tenga algún asunto pendiente y acreditar ante este Tribunal el cumplimiento con lo anterior, incluyendo una lista de los clientes a quienes le notificó de su suspensión, dentro del término de treinta (30) días, a partir de la notificación de la Opinión *Per Curiam* y de esta Sentencia. No hacerlo pudiera conllevar que no se le reinstale al ejercicio de la abogacía de solicitarlo en el futuro.

Lo acordó el Tribunal y certifica el Secretario del Tribunal Supremo.

Javier O. Sepúlveda Rodriguez
Secretario del Tribunal Supremo